BLANK ROME LLP
Rick Antonoff
Andrew B. Eckstein
Leon R. Barson (*pro hac vice* admission pending)
Josef W. Mintz (*pro hac vice* admission pending)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Counsel to Zohar CDO 2003-1, Limited,*
*Zohar CDO 2003-1 Corp. and Zohar CDO 2003-1, LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **Zohar CDO 2003-1, Limited,** | : | Case No. 15-23680 (RDD) |
| | : | |
| Alleged Debtor. | : | |
| | : | |

------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **Zohar CDO 2003-1, Corp.,** | : | Case No. 15-23681 (RDD) |
| | : | |
| Alleged Debtor. | : | |
| | : | |

------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **Zohar CDO 2003-1, LLC,** | : | Case No. 15-23682 (RDD) |
| | : | |
| Alleged Debtor. | : | |
| | : | |

------------------------------------------------------------x

**ANSWER AND MOTION OF ALLEGED DEBTORS FOR AN ORDER**
**DISMISSING INVOLUNTARY CHAPTER 11 PETITIONS OR, IN THE**
<u>**ALTERNATIVE, ABSTAINING PURSUANT TO 11 U.S.C. § 305**</u>

# TABLE OF CONTENTS

**Preliminary Statement** ........................................................................................................... 1

**Jurisdiction** ............................................................................................................................. 2

**Relevant Background** ............................................................................................................ 3

**Argument** ................................................................................................................................ 5

    I.    Patriarch XV Is Not a Qualified Petitioning Creditor Under Section 303(b) of the Bankruptcy Code .................................................................................... 5

    II.    Patriarch XV Waived Its Right To File Involuntary Bankruptcy Petitions Against the Zohar Entities ........................................................................................ 7

        A.    Patriarch XV Waived Its Right To File The Involuntary Petitions ............................................................................................................ 7

        B.    Patriarch XV's Waiver Is Enforceable Under New York Law ............ 8

    III.    The Filing and Continuation Of Involuntary Chapter 11 Cases Is Contrary To Market Expectations ............................................................................................ 9

    IV.    The Court Should Exercise Its Discretion To Abstain From The Involuntary Chapter 11 Cases Under 11 U.S.C. § 305(A) .................................. 10

**Notice** ..................................................................................................................................... 13

**No Prior Request** ................................................................................................................. 13

**Conclusion** ............................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*680 Fifth Ave. Assocs. v. The Mut. Benefit Life Ins. Co. in Rehabilitation (In re 680 Fifth Ave. Associates)*,
  156 B.R. 726 (Bankr. S.D.N.Y.) ........................................................................................... 6

*Citibank, N.A. v. Plapinger*,
  485 N.E. 2d 974 (N.Y. 1985) ................................................................................................ 8

*Danann Realty Corp. v. Harris*,
  157 N.E.2d 597 (N.Y. 1959) ................................................................................................. 8

*Exec. Bank of Ft. Lauderdale, Fla. v. Tighe*,
  429 N.E.2d 1054 (N.Y. 1981) ............................................................................................... 8

*Fortress Credit Corp. v. Hudson Yards, LLC*,
  78 A.D.3d 577 (N.Y. App. Div. 2010) .................................................................................. 8

*In re Allen-Main Assocs. Ltd. P'Ship*,
  218 B.R. 278 (Bankr. D. Conn. 1998) ................................................................................... 6

*In re Axl Ind., Inc.*,
  127 B.R. 482 (S.D. Fla. 1991) ............................................................................................. 12

*In re DB Capital Holdings, LLC*,
  463 B.R. 142 (B.A.P. 10th Cir. 2010) ................................................................................... 7

*In re Monitor Single Lift I, Ltd.*,
  381 B.R. 455 (Bankr. S.D.N.Y. 2008) ................................................................................ 12

*In re Zais Inv. Grade Ltd. VII*,
  455 B.R. 839, 842 (Bankr. D.N.J. 2011) ............................................................................... 3

*Macy's Inc. v. J.C. Penney Corp., Inc.*,
  107 A.D.3d 616 (App. Div. 1st Dept. 2013) ......................................................................... 8

*N. Fork Bank v. Computerized Quality Separation Corp.*,
  62 A.D.3d 973 (N.Y. App. Div. 2009) .................................................................................. 8

*Red Tulip, LLC v. Neiva*,
  44 A.D.3d 204 (N.Y. App. Div. 2007) .................................................................................. 8

*Profutures Special Equity Fund, L.P. v. Spade (In re Spade)*,
  269 B.R. 225, 229 (D. Colo. 2001) ..................................................................................... 12

*S.E.C. v. Byers*,
  609 F.3d 87 (2d Cir. 2010) ..................................................................................................... 7

*In re Westerleigh Dev. Corp.*,
  141 B.R. 38, 40 (Bankr. S.D.N.Y. 1992) .............................................................................. 12

*W.W.W. Assoc. v. Giancontieri*,
  77 N.Y.2d 157 (N.Y. 1990) .................................................................................................... 8

**Statutes**

11 U.S.C. § 303 ............................................................................................................... passim

11 U.S.C. § 305 ............................................................................................................... passim

28 U.S.C. § 157 ........................................................................................................................ 2

28 U.S.C. § 1334 ...................................................................................................................... 2

28 U.S.C. § 1408 ...................................................................................................................... 2

28 U.S.C. § 1409 ...................................................................................................................... 2

**Rules**

Fed. R. Bankr. P. 1011 ............................................................................................................. 1

**Other Authorities**

S. Rep. No. 95-989, 36, 1978 U.S. Code Cong. & Admin. News ......................................... 12

SIFMA Statistics, Structured Finance, Global CDO Issuance and Outstanding
  (xls), updated 10/1/15, http://www.sifma.org/research/statistics.aspx ................................... 9

SIFMA Statistics, Structured Finance, US ABS Issuance and Outstanding
  (xls), updated 12/11/15, http://www.sifma.org/research/statistics.aspx ................................. 9

Black's Law Dictionary (10th ed. 2014) ................................................................................... 8

137126.01062/101786596v.8

TO:  THE HONORABLE ROBERT D. DRAIN
     UNITED STATES BANKRUPTCY JUDGE

1. Zohar CDO 2003-1, Limited, Zohar CDO 2003-1, Corp. and Zohar CDO 2003-1, LLC (collectively, the "Zohar Entities"), by their undersigned counsel, respectfully submit this Answer and Motion pursuant to Sections 303 and 305 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 1011 of the Federal Rules of Bankruptcy Procedure for an order dismissing, or in the alternative abstaining from, the involuntary chapter 11 cases filed against the Zohar Entities by Patriarch Partners XV, LLC ("Patriarch XV").

**PRELIMINARY STATEMENT**

2. Patriarch XV filed involuntary chapter 11 petitions against each of the Zohar Entities on November 22, 2015 (collectively, the "Involuntary Petitions") [Dkt. 1][1] and concurrently filed its Motion of Petitioning Creditor, Patriarch Partners XV, LLC to Terminate the Debtors' Exclusivity Periods (the "Exclusivity Motion") [Dkt. 2]. The Involuntary Petitions should be dismissed on the bases that (a) Patriarch XV is not a qualified petitioning creditor under 11 U.S.C. § 303(b) because Patriarch XV does not hold an unsecured claim against the Zohar Entities and (b) even if eligible, Patriarch XV knowingly, voluntarily and unambiguously waived any right it might otherwise have had to file the Involuntary Petitions.

3. The Zohar Entities further assert that the Involuntary Petitions should be dismissed on the grounds that the commencement and prosecution of involuntary bankruptcy against limited purpose entities, such as the Zohar Entities, is contrary to expectations and practices in CDO and CLO markets and would unduly disrupt pricing, risk analysis and trading in global structured finance markets.

---

[1] Case numbers for each of the involuntary chapter 11 cases are 15-23680-rdd for Zohar CDO 2003-1, Limited; 15-23681-rdd for Zohar CDO 2003-1, Corp.; and 15-23682-rdd for Zohar CDO 2003-1, LLC. To the extent the docket numbers for the same pleadings filed in each case are different from each other, citations to the docket in this Motion "[Dkt. __]" refer to case number 15-23680 and by reference herein are applicable to the corresponding pleadings filed in each of the other cases.

4.      Alternatively, the Zohar Entities respectfully request the Court to abstain from the involuntary chapter 11 cases on the basis that they were commenced solely to resolve a dispute between two creditors that is already the subject of prior litigation *commenced by the petitioning creditor*, pending in the Supreme Court of the State of New York styled as *Lynn Tilton and Patriarch Partners XV, LLC v. MBIA Inc. and MBIA Insurance Corporation*, Index No. 68880/2015 at Doc. No. 2 (N.Y. Sup. Ct. Nov. 2, 2015) (the "State Court Action").[2]

5.      The relief sought by Patriarch XV in these involuntary cases is duplicative of that which it already seeks in the State Court Action commenced *before* filing these involuntary cases. The Zohar Entities respectfully submit that interests of judicial economy and the interests of the creditors and the debtors are better served by this Court exercising its discretion to abstain from these involuntary chapter 11 cases and deferring to the previously filed State Court Action to litigate and resolve the identical issues and relief Patriarch XV seeks to resolve here.

6.      For the reasons set forth in this Motion, the Zohar Entities respectfully submit that this Court dismiss, or in the alternative abstain from, the chapter 11 cases.

## JURISDICTION

7.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are 11 U.S.C. §§ 303 and 305.

---

[2]   A copy of the complaint in the State Court Action (the "Complaint") is attached hereto as **Exhibit A**.

**RELEVANT BACKGROUND**

8.      These cases are unusual but not entirely unprecedented.[3] The Zohar Entities are limited purpose entities, specifically structured to avoid being debtors in bankruptcy cases, and certainly not involuntary bankruptcy cases. Their organizational documents limit their permissible activities to issuing securities, holding assets, contracting third parties to manage the assets, granting a security interest in the assets and engaging in activities necessary or desirable in connection with the foregoing. *See* **Exhibit B** attached hereto (Amended and Restated Memorandum of Association for Zohar CDO 2003-1, Limited). They are not operating companies with employees, vendors, landlords, banks or various other constituents that would be parties-in-interest in a bankruptcy case.

9.      Under the Indenture,[4] all Holders of Notes, including, Patriarch XV, voluntarily and unambiguously agreed ***not*** to file an involuntary bankruptcy petition against the Zohar Entities. *See* Indenture Sec. 13.4 (Non-Petition). And to further protect against the prospect of a Holder filing an involuntary bankruptcy petition, the Notes themselves provide that the obligations of the Zohar Entities are limited recourse obligations "payable solely from the Collateral" and that upon the realization of the Collateral and the proceeds thereof "any outstanding indebtedness or obligation shall be extinguished." Indenture, Exh. A-1 (Form of Class A Note). In other words, a Holder of Class A Notes, such as Patriarch XV, can never hold a claim against any of the Zohar Entities that is more than the value of any lien on property of the Zohar Entities securing such

---

[3] In *In re Zais Inv. Grade Ltd. VII,* 455 B.R. 839, 842 (Bankr. D.N.J. 2011), the United States Bankruptcy Court for the District of New Jersey denied a motion to dismiss an involuntary chapter 11 petition filed against a CDO by senior note holders. Unlike the present cases, however, (a) the petitioning creditors were not subject to a non-petition provision and (b) the debtor-issuer in *Zais* did not seek to dismiss the involuntary petition. Instead, the motion to dismiss in *Zais* was filed by junior note holders *after* an order for relief had already been entered. *Id.* at 843.

[4] Capitalized terms used in this Motion and not otherwise defined have the meanings ascribed to such terms in the Indenture, dated as of November 13, 2003 (as amended, supplemented or otherwise modified, the "<u>Indenture</u>"), among the Zohar Obligors, the Credit Enhancer, the Class A-1 Note Agent and the Trustee (as all such terms are defined therein). *See* Indenture, attached hereto (without supplements) as **Exhibit C**.

claim – to wit, an unsecured claim – as is required by Section 303(b) of the Bankruptcy Code to be a qualifying petitioning creditor. *See* 11 U.S.C. § 303(b).

10. For the foregoing reasons alone, the Court should dismiss these chapter 11 cases.

11. The Zohar Entities and Holders of Notes (at least those other than Patriarch XV) have an interest in upholding the enforceability of the structural and contractual provisions comprising this and other CDO and CLO transactions and assuring that all parties in the transaction comply with those provisions. More broadly, participants on all sides of the CDO and CLO markets generally, which represent more than two trillion dollars in outstanding transactions, rely on the enforceability of those provisions in pricing securities at issuance, assessing risk during the life of the transactions and determining whether and at what amounts to invest in secondary markets for these securities. The structure and documentation of these transactions necessarily create expectations in the markets that involuntary bankruptcy proceedings will not occur and are carefully drawn to avoid them.

12. The actions of Patriarch XV, as a Holder of Notes filing involuntary bankruptcy petitions against the Zohar Entities, puts a cloud over these markets, casting doubt as to the enforceability of provisions prohibiting such filings. If permitted to proceed, the involuntary bankruptcy cases may lead to rating agency downgrades, loss in value of similarly structured and documented CDO and CLO transactions and loss of confidence in other structured and securitized financial products.

13. The Zohar Entities respectfully request that this Court consider these external market factors in deciding this Motion.

14. Finally, even if this Court concludes that the foregoing reasons are not sufficient to dismiss these cases, or the Court does not find reasons on its own to dismiss, the Zohar Entities respectfully request the Court to exercise its discretion under Section 305(a) of the Bankruptcy

Code to decline jurisdiction over these cases. These bankruptcy cases are, at bottom, a dispute between two creditors that is already the subject of litigation brought by one of those parties – the petitioning creditor – against the other. These two parties are the only parties with material economic interests in these cases.[5]

15. This is a matter between two creditors that can be, and will be, resolved in a forum other than a bankruptcy court – the one forum the Zohar Entities were deliberately and carefully structured to avoid and which all Holders of Notes, including Patriarch XV, agreed to avoid.

16. For the reasons set forth herein, the Zohar Entities respectfully request that the Court dismiss, or in the alternative decline jurisdiction over, these cases.

## ARGUMENT

### I.

### PATRIARCH XV IS NOT A QUALIFIED PETITIONING CREDITOR UNDER SECTION 303(b) OF THE BANKRUPTCY CODE

17. Patriarch XV, the sole petitioning creditor, is not qualified to file the involuntary petitions in these cases because it does not hold a claim that is more than the value of liens on property of any of the Zohar Entities securing its claim, as required under Section 303(b) of the Bankruptcy Code.[6] Patriarch XV's claim is limited recourse payable solely from the Collateral and therefore can never be more than the value of liens securing such claim.

---

[5] Nominally, there is one other potentially interested party – Octaluna LLC – an affiliate of Patriarch XV that holds junior Notes and Preference Shares of the Issuer. See Exclusivity Motion ¶ 9.

[6] Section 303(b) of the Bankruptcy Code provides that "[a]n involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title –

   (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,325 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

   (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549 or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $15,325 of such claims; . . . .

-5-

18. Section 303(b) of the Bankruptcy Code requires an involuntary petitioner to hold at least $15,325 of unsecured debt. 11 U.S.C. § 303(b). *See also In re Allen-Main Assocs. Ltd. P'ship*, 218 B.R. 278, 279-80 (Bankr. D. Conn. 1998), aff'd, 223 B.R. 59 (2d Cir. BAP 1998) (holding that a non-recourse secured creditor could not be the sole petitioning creditor in an involuntary case).[7] The Notes in this case are non-recourse "payable solely from the Collateral." *See* Indenture at Exh. A-1 (Form of Class A Note). Moreover, the Notes provide that upon realization of the Collateral and its proceeds, "any outstanding indebtedness or obligation shall be extinguished." *Id*. Patriarch XV can never have a claim that is more than the value of liens on the Collateral and therefore can never hold an unsecured claim and thus cannot be a petitioning creditor under Section 303(b). *See Allen-Main Assocs. Ltd. P'ship*, 218 B.R. at 279-80. *See also 680 Fifth Ave. Assocs. v. The Mut. Benefit Life Ins. Co. in Rehabilitation (In re 680 Fifth Ave. Associates)*, 156 B.R. 726, 732 (Bankr. S.D.N.Y.) aff'd, 169 B.R. 22 (S.D.N.Y. 1993) aff'd, 29 F.3d 95 (2d Cir. 1994) ("A nonrecourse creditor is a creditor who has agreed to look only to its collateral for satisfaction of its debt and does not have any right to seek payment of any deficiency from a debtor's other assets.").

19. Because Patriarch XV does not hold an unsecured claim against the Zohar Entities, it cannot be a petitioning creditor under Section 303(b) of the Bankruptcy Code. The Court should therefore dismiss these involuntary cases.

**II.**

---

11 U.S.C. § 303(b).

[7] The fact that *Allen-Main* was an involuntary chapter 7 case does not diminish its application here. Section 303(b) of the Bankruptcy Code expressly applies to both chapter 7 and chapter 11. 11 U.S.C. § 303(a) and (b).

## PATRIARCH XV WAIVED ITS RIGHT TO FILE INVOLUNTARY BANKRUPTCY PETITIONS AGAINST THE ZOHAR ENTITIES

20. "Simply put, there is no unwaivable right to file an involuntary bankruptcy petition." *S.E.C. v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010). *See also In re DB Capital Holdings, LLC*, 463 B.R. 142 (10th Cir. BAP 2010) (affirming dismissal of involuntary bankruptcy cases based on agreement not to file among members of a limited liability company). Patriarch XV, the petitioning creditor in these cases, voluntarily, knowingly and unambiguously waived its right to file involuntary bankruptcy cases against the Zohar Entities (*see* Indenture at Sec. 13.4). The waiver is binding and enforceable under New York law pursuant to which the Indenture, the Notes and all matters arising thereunder are governed and are to be construed. *See* Indenture at Sec. 18.9.

### A. Patriarch XV Waived its Right to File the Involuntary Petitions

21. Section 13.4 of the Indenture provides, with exceptions not relevant to this Motion,[8] as follows:

> The Holders of Notes agree not to institute against, or join any other Person in instituting against, any Zohar Obligor any bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceeding or other proceedings under federal or state bankruptcy or similar laws until at least one year and one day, or if longer the applicable preference period then in effect, after the payment in full of all Notes issued under the Indenture . . . .

Indenture at Sec. 13.4 (Non-Petition).

22. The agreement of all Holders not to file an involuntary bankruptcy petition against the Zohar Entities is clear and unambiguous: "Holders . . . agree not to institute against . . . any Zohar Obligor any bankruptcy . . . proceedings." *Id*. As a member of a sophisticated and professional group of companies well versed in investing and financing (*see* Exclusivity Motion at ¶ 8), Patriarch XV's agreement to relinquish a right it might otherwise have had constitutes a

---

[8] The exceptions allow Holders to (a) take action in a bankruptcy case filed voluntarily by the Zohar Entities or involuntarily by a person other than a Holder and (b) commence against the Zohar Entities "any legal action which is not a bankruptcy" or similar proceeding. Indenture at Sec. 13.4.

voluntary and knowing waiver. *See* WAIVER, Black's Law Dictionary (10th ed. 2014) (defining "waiver" as "[t]he voluntary relinquishment or abandonment — express or implied — of a legal right or advantage").

### B. Patriarch XV's Waiver is Enforceable under New York Law

23. Waivers, particularly in commercial and financial contracts, are strictly enforced under New York law. See, e.g., *Citibank, N.A. v. Plapinger*, 485 N.E. 2d 974 (N.Y. 1985) (enforcing waiver of defense of fraud in the inducement); *Exec. Bank of Ft. Lauderdale, Fla. v. Tighe*, 429 N.E.2d 1054 (N.Y. 1981) (enforcing waiver of release of collateral); *Fortress Credit Corp. v. Hudson Yards, LLC,* 78 A.D.3d 577 (N.Y. App. Div. 2010) (enforcing waiver of bad faith defense); *N. Fork Bank v. Computerized Quality Separation Corp.*, 62 A.D.3d 973, 974 (N.Y. App. Div. 2009) (enforcing waiver of counterclaim); *Red Tulip, LLC v. Neiva*, 44 A.D.3d 204, 207-212 (N.Y. App. Div. 2007) (enforcing waiver of defenses). *See also W.W.W. Assoc. v. Giancontieri*, 77 N.Y.2d 157, 162 (N.Y. 1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.").

24. This has long been the law in New York (s*ee Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959) (holding that a reliance waiver was enforceable if it was specific "as to the very matter as to which [the buyer] now claims it was defrauded")), and remains the law today (*see Macy's Inc. v. J.C. Penney Corp., Inc.*, 107 A.D.3d 616 (N.Y. App.Div. 2013) (enforcing future conflicts waiver in legal representation)).

25. The Indenture in these cases, and all matters arising out of or relating to the Indenture and the Notes "SHALL BE CONSTRUED IN ACCORDANCE WITH AND BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK." Indenture at Sec. 18.9 (emphasis in original). Since New York law consistently and strictly enforces waivers, Patriarch

-8-

XV's waiver of the right to file involuntary bankruptcy petitions in these cases is enforceable and should be upheld by this Court.

26. For the foregoing reasons, this Court should conclude that Patriarch XV waived its right to file the Involuntary Petitions and dismiss these chapter 11 cases.

### III.

### THE FILING AND CONTINUATION OF INVOLUNTARY CHAPTER 11 CASES IS CONTRARY TO MARKET EXPECTATIONS

27. The Involuntary Petitions should be dismissed on the grounds that the commencement and prosecution of insolvency proceedings of limited purpose CDOs, such as the Zohar Entities, is contrary to expectations and practices in structured finance markets and would unduly disrupt pricing, risk analysis and trading in a global industry comprising more than two trillion dollars of outstanding issuances.[9]

28. Parties to such transactions have an interest in upholding the enforceability of the structural and contractual provisions put in place to avoid bankruptcy and an expectation that all parties to the transaction will comply with those provisions. Participants on all sides of the structured finance and securitization markets rely on the enforceability of the transaction documents in pricing securities at issuance, assessing risk during the life of the transactions and determining whether and at what amounts to invest in secondary market trading for these securities. The structure and documentation of these transactions necessarily create expectations in the markets that involuntary bankruptcy proceedings will not occur and are carefully drawn to avoid them.

---

[9] *See* SIFMA Statistics, Structured Finance, Global CDO Issuance and Outstanding (xls), updated 10/1/15, http://www.sifma.org/research/statistics.aspx (last visited Dec. 10, 2015) and SIFMA Statistics, Structured Finance, US ABS Issuance and Outstanding (xls), updated 12/11/15, http://www.sifma.org/research/statistics.aspx (last visited Dec. 11, 2015).

-9-

29. The Involuntary Petitions in these cases create a cloud over these expectations, casting doubt as to the reliability and enforceability of contract provisions prohibiting such filings. If permitted to proceed, these cases may lead to ratings downgrades and loss in value of similarly structured and documented CDO and CLO transactions and loss of confidence in other structured and securitized financial products.

30. The Court should consider these external market factors as additional reasons to dismiss these cases.

### IV.

### THE COURT SHOULD EXERCISE ITS DISCRETION TO ABSTAIN FROM THE INVOLUNTARY CHAPTER 11 CASES UNDER 11 U.S.C. § 305(a)

31. Section 305(a) of the Bankruptcy Code provides, in relevant part, that:

> (a) The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if –
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension.

11 U.S.C. § 305(a). In this case, the Court should exercise its discretion to suspend these proceedings for several reasons.

32. <u>First</u>, the Zohar Entities and the Holders expressly agreed to avoid involuntary bankruptcy. They carefully structured and documented the transactions to provide for allocation of assets and proceeds outside of bankruptcy. To the extent filing the Involuntary Petitions expresses a recently changed preference on the part of Patriarch XV, the provisions of the Indenture and the Notes, to which Patriarch XV implicitly agreed when it became a Holder, should be binding upon Patriarch XV.

33. <u>Second</u>, these cases are, at bottom, a request by Patriarch XV for this court to resolve its dispute with MBIA that is already the subject of the State Court Action commenced by

Patriarch XV prior to filing the Involuntary Petitions. The motive of the petitioning creditor in filing these cases is evident in the Exclusivity Motion filed contemporaneously with the involuntary petitions. Patriarch XV's allegations against MBIA in the State Court Action are identical to those set forth in support of the Exclusivity Motion. In the State Court Action, Patriarch XV seeks damages, including punitive damages, against MBIA based on, among other things, the alleged loss in value of the Class A-3 Notes resulting from MBIA's alleged fraudulent inducement and breach of contract. *See* Complaint at ¶¶ 76, 84, 89 and 96. Similarly, Patriarch XV states in the Exclusivity Motion that it filed the involuntary chapter 11 petitions to stop MBIA from continuing to pursue the very same scheme alleged in the State Court Action (Exclusivity Motion at ¶ 58), to seek discovery from MBIA (*id.*) and to recover value for the Class A-3 Notes (*id.* at ¶ 4.).

34. In the Exclusivity Motion Patriarch XV recounts the history and relationships among MBIA, Patriarch XV as they relate not only to the Zohar Entities in this case but to other Zohar CDOs involving MBIA and other Patriarch entities. *See* Exclusivity Motion ¶¶ 7 – 49. The same history and relationships form the allegations contained in the Complaint. *See* Complaint ¶¶ 21 – 69. In the Exclusivity Motion Patriarch XV says that it filed the involuntary cases to protect its investment in the Class A-3 Notes. *See* Exclusivity Motion ¶¶ 4 and 47. In the State Court Action Patriarch XV alleges damages that include "the loss of value of the A-3 Notes." *See* Complaint ¶¶ 76, 84, 89 and 96.

35. Patriarch XV intends to to use bankruptcy discovery "to further investigate" MBIA's alleged "fraudulent promises to extend Zohar-I's maturity" (Exclusivity Motion ¶ 58), the very same conduct alleged against MBIA in the State Court Action (Complaint ¶ 62).

36. The legislative history of Section 305(a) specifies that a court may abstain if "an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future

-11-

threats to extract full payment." S. Rep. No. 95-989, 36, 1978 U.S. Code Cong. & Admin. News, pp. 5787, 5822; s*ee also In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 463 (Bankr. S.D.N.Y. 2008) (citing legislative history with approval and recognizing "the prevalence of § 305(a) motions involving involuntary bankruptcy cases"). *See also In re Westerleigh Dev. Corp.*, 141 B.R. 38, 40 (Bankr. S.D.N.Y. 1992) ("a bankruptcy court should not entertain a two-party dispute unless special circumstances exist, such as fraud, artifice or scam.")

37. Here, the petitioning creditor acknowledges having commenced these cases to further objectives that are already the subject of the State Court Action – a litigation they commenced prior to filing the involuntary petitions and that is currently pending in New York Supreme Court. *See Profutures Special Equity Fund, L.P. v. Spade (In re Spade)*, 269 B.R. 225, 229 (D. Colo. 2001) ("There is no need for the federal court to resolve a matter which is grounded in state law issues currently pending in state court."); *In re Axl Ind., Inc.*, 127 B.R. 482, 484 (S.D. Fla. 1991) ("The bankruptcy courts generally grant motions to abstain in two-party disputes where the petitioner can obtain adequate relief in a non-bankruptcy forum. Courts consider the motivation of the petitioning creditor as a factor in making such a determination.").

38. For the foregoing reasons, if the Court does not dismiss these cases, the Zohar Entities respectfully request the Court to exercise its discretion under Section 305(a) of the Bankruptcy Code and abstain.

### **RESERVATION OF RIGHTS**

39. The Zohar Entities reserve their rights under Section 303(i) of the Bankruptcy Code to seek judgment against Patriarch XV.

## NOTICE

40. Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to Patriarch XV; (c) counsel to MBIA; (d) the Securities and Exchange Commission; and (e) any such other party entitled to notice pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b). The Zohar Entities respectfully submit that no other notice is necessary or required.

## NO PRIOR REQUEST

41. No prior request for the relief requested herein has been made to this or any other Court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**CONCLUSION**

For the foregoing reasons, the Zohar Entities respectfully request that the Court: (a) enter an order (i) dismissing the involuntary cases or, in the alternative, (ii) abstaining from the involuntary cases; and (b) grant the Zohar Entities such other relief as the Court deems just, proper and equitable.

Dated: New York, New York
December 14, 2015

**BLANK ROME LLP**

By: */s/ Rick Antonoff*
Rick Antonoff
Andrew B. Eckstein
Leon R. Barson (*pro hac vice* admission pending)
Josef W. Mintz (*pro hac vice* admission pending)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Counsel to Zohar CDO 2003-1, Limited, Zohar CDO 2003-1 Corp. and Zohar CDO 2003-1, LLC*