SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
Mark A. McDermott
Shana A. Elberg
Christine A. Okike
Four Times Square
New York, New York 10036
(212) 735-3000

*Counsel to Petitioning Creditor, Patriarch Partners XV, LLC*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11** |
| | : | |
| **ZOHAR CDO 2003-1, LIMITED, <u>et al.</u>,** | : | **Case No. 15-23680 (RDD)** |
| | : | |
| **Debtors.**[1] | : | **Involuntary Petitions Pending** |
| | : | |
| | : | |

**RESPONSE AND OBJECTION TO ANSWER AND MOTION OF ALLEGED DEBTORS
FOR AN ORDER DISMISSING INVOLUNTARY CHAPTER 11 PETITIONS OR, IN
THE ALTERNATIVE, ABSTAINING PURSUANT TO 11 U.S.C. § 305**

---

[1] The Debtors and, where applicable, the last four digits of their taxpayer identification numbers are as follows: Zohar CDO 2003-1, Limited (5119), Zohar CDO 2003-1, Corp., and Zohar CDO 2003-1, LLC. The address for Zohar CDO 2003-1, Limited is c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands, and the address for the other Debtors is c/o Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, DE 19711.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 5

BACKGROUND ........................................................................................................................ 9

ARGUMENT ............................................................................................................................ 12

A.  Patriarch Is A Qualified Petitioning Creditor .................................................. 12

B.  Zohar-I Has Failed To Carry Its Burden of Proving That These Chapter 11
Cases Should Be Dismissed ............................................................................... 15

    1.  Contractual Restrictions on Bankruptcy Filings Are Irrelevant In
Determining Whether Orders For Relief Should Be Entered
Granting Involuntary Petitions ............................................................... 17

    2.  Zohar-I Has Failed To Carry Its Burden Of Showing Objective and
Subjective Bad Faith ................................................................................ 18

        (a)  Reorganization of Zohar-I Is Not Objectively Futile ................................. 18

        (b)  A Purported Breach Of An Anti-Petition Covenant Does
Not Constitute Subjective Bad Faith ........................................... 19

        (c)  Policies Respecting The Securities Markets And
Enforcement of Commercial Agreements Do Not Warrant
Dismissal Of These Cases .......................................................... 25

C.  Zohar-I Has Failed to Carry Its Burden of Establishing That Abstention Is
Proper Under 11 U.S.C. § 305 .......................................................................... 28

CONCLUSION ......................................................................................................................... 33

i

## TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGE**

*In re 68 West 127, Street, LLC*,
    285 B.R. 838 (Bankr. S.D.N.Y. 2002) ................................................................. 16, 22, 30

*In re 680 Fifth Ave. Associates*,
    29 F.3d 95, 98 (2d Cir. 1994) ........................................................................................ 13

*Abacus Federal Savings Bank v. ADT Security Services, Inc.*,
    18 N.Y.3d 675 (2012) .................................................................................................... 27

*In re American Globus Corp.*,
    195 B.R. 263 (Bankr. S.D.N.Y. 1996) ......................................................................... 23

*Carteret Savings Bank, F.A. v. Nastasi-White, Inc. (In re East-West Associates)*,
    106 B.R. 767 (S.D.N.Y. 1989) ................................................................................. 12, 13

*CC Britain Equities L.L.C. v. Allen-Main Associates Ltd. Partnership (In re Allen-Main Associates Ltd.)*,
    223 B.R. 59 (B.A.P. 2d Cir. 1998) ............................................................................... 14

*In re Central Jersey Airport Services, LLC*,
    282 B.R. 176 (Bankr. D.N.J. 2002) .............................................................................. 20

*In re Century/ML Cable Venture*,
    294 B.R. 9 (Bankr. S.D.N.Y. 2003) .............................................................................. 16

*In re Aerovias Nacionales de Colombia S.A. Avianca*,
    303 B.R. 1 (Bankr. S.D.N.Y. 2003) .............................................................................. 29

*In re Corino*,
    191 B.R. 283 (Bankr. N.D.N.Y. 1995) ......................................................................... 29

*C-TC 9th Avenue Partnership v. Norton Co. (In re C–TC 9th Avenue Partnership)*,
    113 F.3d 1304 (2d Cir. 1997) ................................................................................... 15, 16

*In re D&F Meat Corp.*,
    68 B.R. 39 (Bankr. S.D.N.Y. 1986) .............................................................................. 16

*In re DB Capital Holdings, LLC*,
    463 B.R. 142 (10th Cir. 2010) ...................................................................................... 25

*Eastman v. Eastman*,
    188 B.R. 621 (B.A.P. 9th Cir. 1995) ............................................................................ 29

*In re Extended Stay, Inc.*,
    Case No. 09-13764 (JLG)  (Bankr. S.D.N.Y. June 15, 2009) ....................................... 27

*In re General Growth Properties, Inc.,*
    409 B.R. 43 (Bankr. S.D.N.Y. 2009)....................................................16, 17, 19, 20, 26, 27

*In re Houston Regional Sports Network LP,*
    505 B.R 468 (Bankr. S.D. Tex. 2014)..................................................17, 22, 23, 27

*Johnson v. Home State Bank,*
    501 U.S. 78 (1991)............................................................................13

*Kalisch-Jarcho, Inc. v. City of New York,*
    58 N.Y.2d 377 (1983) ......................................................................27

*In re Kingston Square Associates,*
    214 B.R. 713 (Bankr. S.D.N.Y. 1997)..............................................16, 17, 20, 21, 27, 30

*Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services (In re
    Lehman Brothers Holdings Inc.),*
    422 B.R. 407 (Bankr. S.D.N.Y. 2010) ............................................26

*Management Technologies, Inc. v. Morris,*
    961 F. Supp. 640 (S.D.N.Y. 1997) ..................................................23

*In re MBM Entertainment, LLC,*
    531 B.R. 363 (Bankr. S.D.N.Y. 2015)..............................................16

*In re Monitor Single Lift I, Ltd.,*
    381 B.R. 455 (Bankr. S.D.N.Y. 2008)..............................................29

*In re Paper I Partners, L.P.,*
    283 B.R. 661 (Bankr. S.D.N.Y. 2002)..............................................29

*In re PCH Associates,* 949 F.2d 585, 604 (2d Cir. 1991) ............................................13

*In re Persico Contracting & Trucking, Inc.,*
    No. 10-22736 (RDD), 2010 WL 3766555 (Bankr. S.D.N.Y. Aug. 20, 2010)............29, 30

*PNC Bank, N.A. v. Park Forest Development Corp. (In re Park Forest Development
    Corp.),*
    197 B.R. 388 (Bankr. N.D. Ga. 1996) ............................................15

*Price v. Gurney,*
    324 U.S. 100 (1945)........................................................................25

*In re Quad-C Funding LLC,*
    496 B.R. 135 (Bankr. S.D.N.Y. 2013)..............................................24, 25

*In re RCM Global Long Term Capital Appreciation Fund, Ltd.,*
    200 B.R. 514 (Bankr. S.D.N.Y. 1996)..............................................32

*In re Reveley*,
    148 B.R. 398 (Bankr. S.D.N.Y. 1992) ............................................................16

*SEC v. Byers*,
    609 F.3d 87 (2d Cir. 2010)..............................................................................24

*In re Sletteland*,
    260 B.R. 657 (Bankr. S.D.N.Y. 2001) ............................................................16

*In re Soundview Elite, Ltd.*,
    503 B.R. 571 (Bankr. S.D.N.Y. 2014), *appeal dismissed*, 512 B.R. 155 (S.D.N.Y.
    2014), *aff'd*, 597 F. App'x 663 (2d Cir. 2015)...........................................15, 16

*In re Sundown Associates*,
    150 B.R. 156 (Bankr. E.D. Va. 1992) ............................................................12

*In re Syndicom Corp.*,
    268 B.R. 26 (Bankr. S.D.N.Y. 2001) ..............................................................16

*Turkish v. Kasenetz*,
    27 F.3d 23 (2d Cir. 1994)................................................................................27

*In re Zais Investment Grade Limited VII*,
    455 B.R. 839 (Bankr. D.N.J. 2011) ..............................................8, 27, 30, 31

## STATUTES

11 U.S.C. § 101 .........................................................................................................5

11 U.S.C. § 303(b) ..................................................................................................12

11 U.S.C. § 303(h) ..................................................................................................17

11 U.S.C. § 305.............................................................................................5, 28, 29

11 U.S.C. § 356(3) ..................................................................................................26

11 U.S.C. § 1112(b)(4) ............................................................................................15

## OTHER AUTHORITIES

2 Alan N. Resnick & Henry J. Sommer, Collier On Bankruptcy at ¶ 305.02 (16th ed. rev.
    2015) ..............................................................................................................28

S. Rep. No. 95-989 (1978) ................................................................................12, 13

Patriarch Partners XV, LLC ("Patriarch XV"), the largest creditor of Zohar CDO 2003-1, Limited, Zohar CDO 2003-1, Corp., and Zohar CDO 2003-1, LLC (collectively, "Zohar-I" or the "Debtors"), by and through its undersigned counsel, respectfully submits this response and objection to the answer and motion filed by Zohar-I for entry of an order, pursuant to sections 1112 and 305 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), dismissing or, alternatively, abstaining from, the involuntary petitions that Patriarch XV filed against the Debtors.  In support of this response and objection, Patriarch XV has filed herewith the *Declaration of Scott Whalen in Support of Response and Objection to Answer and Motion of Alleged Debtors for an Order Dismissing Involuntary Chapter 11 Petitions or, in the Alternative, Abstaining Pursuant to 11 U.S.C. § 305* (the "Whalen Declaration").  In further support of this response and objection, Patriarch respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Patriarch XV holds approximately $286.5 million in debt issued by Zohar-I. Patriarch XV filed involuntary petitions against Zohar-I in order to restructure its obligations, including the obligations owed to Patriarch XV, plus approximately $149 million in senior debt obligations held by MBIA Inc. and MBIA Insurance Corporation (collectively, "MBIA"). Patriarch XV also filed these petitions in order to protect Zohar-I's assets from foreclosure by MBIA and the loss of value that such foreclosure would cause.  Those assets are comprised of debt obligations owed to Zohar-I by corporate borrowers, primarily comprised of manufacturing companies in various stages of distress or restructuring.  An affiliate of Patriarch XV that is owned and controlled by Ms. Lynn Tilton, one of the most active and successful distressed investors and turnaround managers in the country, is the collateral manager of Zohar-I.

5

2.      These involuntary petitions are also designed to protect two other funds managed by Ms. Tilton, referred to below as Zohar-II and Zohar-III.  MBIA has over five times the exposure – approximately $805 million – to Zohar-II that it does to Zohar-I.  Significantly, Zohar-I and Zohar-II hold debt obligations of certain of the same operating companies. Accordingly, if MBIA obtains the debt positions owned by Zohar-I through foreclosure, MBIA will use those positions against the operating companies to enhance its recoveries not only on its exposure to Zohar-I, but also on its much larger exposure to Zohar-II.  Indeed, many of these companies are also obligors of Zohar-III, another investment fund in which MBIA has no interests.  MBIA's scheme will certainly cause untold damage to Zohar-III, whose stated maturity is not until April 2019 and whose value is anticipated today to fully repay the noteholders.

3.      As described further below, Patriarch XV  has developed a plan for restructuring the affairs of both Zohar-I and Zohar-II.  In particular with respect to Zohar-I, Patriarch XV has already drafted a plan of reorganization and related disclosure statement for Zohar-I.  There is no dispute that MBIA is oversecured.  Accordingly, the plan provides that reorganized Zohar-I will pay MBIA in full with interest while preserving value for the notes held by Patriarch XV.  Under the plan, Patriarch XV will subordinate any recovery on its notes to prior payment in full of MBIA.  Patriarch XV filed, with its involuntary petitions, a motion seeking to terminate the Debtors' exclusive periods for filing and soliciting votes on a plan of reorganization so that Patriarch XV can promptly file and pursue its reorganization plan for Zohar-I.

4.      Notwithstanding the foregoing, the two Cayman Island directors of Zohar-I have caused Zohar-I to file an answer to the involuntary petitions and a motion requesting this Court to dismiss the petitions or, alternatively, to abstain from hearing them.  Respectfully, the motion should be denied.  Zohar-I is a collateralized loan obligation ("CLO") organized under the laws

of the Cayman Islands with no operating assets and no employees, and whose common shares do not entitle their holder -- a Cayman Islands charity -- to any meaningful economic value. Moreover, the Cayman Islands directors have virtually no decision-making authority over Zohar-I:  under the relevant documents, MBIA is the "Controlling Party" of Zohar-I.  By virtue of such authority, MBIA has the <u>exclusive</u> authority to control the disposition of Zohar-I's assets, not Zohar-I or its directors.

5.      As a result of this structure -- common to CLO's -- Zohar-I and its Cayman Islands directors are not acting like traditional fiduciaries, or in the best interests of <u>all</u> of Zohar-I's stakeholders.  With virtually no authority to direct the course of Zohar-I's future, the directors' duties are limited to ministerial functions designed to maintain Zohar-I's compliance with Cayman Islands corporate law.  Indeed, the directors' lack of legal or economic interest in these matters is reflected in the arguments they made in their answer and motion:  those arguments rely <u>exclusively</u> on technical policy and other arguments that betray a motivation to protect the parochial interests of the Cayman Islands CLO cottage industry, rather than to protect Zohar-I's value.

6.      The Cayman Island directors did not even bother responding to any aspect of Patriarch XV's motion to terminate exclusivity, nor have they suggested any interest in proposing a restructuring plan for Zohar-I.  In fact, they played absolutely <u>no</u> role in the course of almost three years of prepetition restructuring discussions between Patriarch XV and its affiliates and MBIA, and they engaged in <u>no</u> contingency planning in connection with the maturity of Zohar-I's obligations in November 2015.  By contrast, Patriarch XV, as the largest creditor of Zohar-I whose claims are subordinated to those of MBIA, has every interest in the affairs of Zohar-I, protecting the operating companies, and maximizing value.  For that reason, it has already

developed a restructuring plan for Zohar-I, described above, that will maximize value for its stakeholders while also protecting the value of the underlying operating companies and the noteholders of Zohar-II and Zohar-III.

7.     In light of the foregoing, it is unclear why Zohar-I's Cayman Island directors have chosen to intervene here in the manner that they have.   In the only other case involving an involuntary filing against a Cayman Islands CLO, *In re Zais Inv. Grade Ltd. VII*, 455 B.R. 839 (Bankr. D.N.J. 2011), the Cayman directors chose not to contest the petition and agreed to termination of exclusivity so that the petitioning creditor could pursue its own plan.   The directors in *Zais* adopted this neutral stance because they simply did not have a dog in the fight; the dispute was solely among the stakeholders in the CLO.   The same is true here, i.e., Zohar-I, as an entity, has no interest in these matters; they are exclusively between MBIA, Patriarch XV, and Patriarch XV's affiliates.   Respectfully, the parochial interests of the Cayman Islands CLO industry should not outweigh the interests of Zohar-I's largest creditor and U.S. bankruptcy policy that favors protection of stakeholder interests and maximization of value.   Had the Cayman Islands directors acted like true fiduciaries, they would not have adopted a course favoring their parochial interests and the interests of an oversecured creditor who needs no protection.   They instead would have acknowledged the reality that Zohar-I needs restructuring, and would have assisted in pursuing that course for the benefit of <u>all</u> stakeholders.

8.     Zohar-I's technical arguments otherwise completely fail to satisfy its burden of proving that these petitions should be dismissed.   Patriarch XV is eligible to serve as a petitioning creditor in this Circuit in accordance with case law that is directly on point but that Zohar-I did not cite in its papers.   Any terms of Zohar-I's indenture that purport to restrict a creditor from filing an involuntary petition are irrelevant to the standards for entry of orders for

8

relief under section 303(h) of the Bankruptcy Code. Moreover, under case law from this and other Districts, none of which are cited in Zohar-I's papers, any purported breach of such a restriction does not constitute grounds for dismissal where, as here, the petitioner has a legitimate motive to preserve value. Finally, Zohar-I has otherwise failed to carry its burden of establishing that this Court should abstain from these proceedings.

9.      For these and the other reasons outlined below, this Court should deny the motion and enter orders for relief granting the involuntary petitions.

## BACKGROUND

10.     As stated above, Zohar-I is a collateralized loan obligation ("CLO"). A CLO is a special purpose vehicle that issues notes to investors in exchange for cash. The CLO uses the cash to invest in loans or other assets that, in turn, generate cash to pay back the CLO's investors over time with interest. Zohar-I was created in 2003 by Ms. Tilton. Zohar-I is managed by Patriarch Partners VIII, LLC ("Patriarch VIII"), an entity that is affiliated with petitioning creditor Patriarch XV. Ms. Tilton owns and controls both Patriarch VIII, founded by her in 2003, and Patriarch XV, founded by her in 2005 (collectively, the "Patriarch entities"). She also serves as the Manager of both Patriarch entities.

11.     Ms. Tilton, the Patriarch entities and their affiliates, focus on the acquisition (through managed investment funds) and invigoration of undervalued, iconic American brands where time, capital and sound strategy can rescue a business and restore value. These brands are comprised primarily of domestic manufacturing companies that produce goods "made in the U.S.A.," including a defense contractor that supplies major military hardware (e.g., helicopters) to U.S. and foreign militaries. Ms. Tilton is the Manager and, in some cases, the CEO of approximately 74 of these companies. Since 2000, Patriarch affiliates and their investment funds

have had ownership in and restructured more than 240 companies with combined revenues of over $100 billion, representing more than 674,000 jobs.  Ms. Tilton's platform is one of the largest woman-owned businesses in the United States.

12.     Zohar-I owns the debt of corporate borrowers in the aggregate face amount of approximately $393 million.  Ms. Tilton owns significant equity interests in the companies and, as noted above, is actively involved in their management.   In addition, Ms. Tilton has invested in certain of the Zohar-I portfolio companies side by side with Zohar-I in the aggregate amount of over $218 million.   Zohar-I is obligated on approximately $149.0 million outstanding principal amount of class A-1 and A-2 floating rate notes (the "A-1 and A-2 Notes") that are held by MBIA.  Zohar-I is also obligated on approximately $286.5 million outstanding principal amount of class A-3 floating rate notes (the "A-3 Notes" and together with the A-1 and A-2 Notes, the "Notes") that are owned by petitioning creditor Patriarch XV.  Zohar-I is also obligated on certain class B notes (the "B-Notes") and preference shares (the "Preference Shares") in the face amount of $150 million and $20 million, respectively, that are held by other entities that ultimately are owned and controlled by Ms. Tilton.

13.     As noted above, MBIA is the "Controlling Party" of Zohar-I, a term defined in the indenture governing the Notes issued by Zohar-I.  As the Controlling Party, MBIA is entitled to exercise various rights and grant or deny its consent to various actions by other parties.[2]

14.     Other Patriarch entities manage separate funds created by Ms. Tilton, including Zohar II 2005-1, Limited ("Zohar-II") and Zohar III, Limited ("Zohar-III").  Zohar-II and Zohar-III are CLOs that also invest in many of the same companies in which Zohar-I has invested.  In

---

[2]     The indenture governing the notes was attached to Zohar-I's answer and motion. Article 16 of the indenture describes MBIA's status as the Controlled Party.

particular, certain of such companies have issued debt that is held by one or more of Zohar-I, Zohar-II and Zohar-III (collectively, the "Zohar Funds").  The Zohar Funds collectively have invested more than $2.5 billion raised from Zohar Fund noteholders.   MBIA insured approximately $149 million and $805 million in notes issued by Zohar-I and Zohar-II, respectively.  MBIA has not insured any of the notes issued by Zohar-III.  Entities that ultimately are owned and controlled by Ms. Tilton own (i) class B notes and preference shares in Zohar-II in the face amount of $200 million and $78 million, respectively, and (ii) class B notes and preference shares in Zohar-III in the face amount of $200 million and $60 million, respectively. These investments, combined with Ms. Tilton's investments in Zohar-I and the portfolio companies, exceed $1 billion in face amount and more than $500 million of cash investment.

15.    As explained in further detail in Patriarch XV's motion to terminate Zohar-I's exclusive periods for filing and soliciting a plan of reorganization, MBIA fraudulently induced Patriarch XV to purchase the A-3 Notes.   Patriarch XV acquired the A-3 Notes for approximately $103.9 million in cash.[3]  Patriarch XV has sued MBIA for fraud in state court in Westchester County.  However, Patriarch XV's practical remedies in that action are limited, as such action will not protect against MBIA's foreclosure on Zohar-I's assets and follow-on efforts to foreclose on the debt of the operating companies, which will substantially prejudice the operating companies, Patriarch XV and its affiliates, and the other investors in Zohar-II and Zohar-III.   Accordingly, Patriarch XV filed involuntary petitions against Zohar-I to protect Zohar-I's assets and the operating companies from dissipation by MBIA, and to attempt to restructure Zohar-I's affairs in an orderly manner under the jurisdiction of this Court.

---

[3]    *See Whalen Declaration* at para. 2.

## ARGUMENT

### A.    Patriarch Is A Qualified Petitioning Creditor

16.    Zohar-I argues that Patriarch XV is not qualified to serve as a petitioning creditor because it holds a secured claim that is non-recourse to Zohar-I and hence does not give rise to an unsecured claim against Zohar-I even though, as an economic matter, there is no dispute that the value of Zohar-I's assets currently are insufficient to pay Patriarch XV in full.  Zohar-I is wrong, and it fails to cite authority from the United States Supreme Court and this Circuit to the contrary.  A secured, non-recourse creditor has a claim against the debtor by virtue of section 102(2) of the Bankruptcy Code that allows such creditor to qualify as a petitioning creditor under section 303(b) of the Bankruptcy Code.  *See Carteret Sav. Bank, F.A. v. Nastasi-White, Inc. (In re East-West Assocs.)*, 106 B.R. 767, 771 (S.D.N.Y. 1989) (finding a non-recourse secured creditor may act as a petitioning creditor in a chapter 11 case by virtue of section 102(2) of the Bankruptcy Code); *In re Sundown Assocs.*, 150 B.R. 156, 159 (Bankr. E.D. Va. 1992) (same).

17.    More specifically, an involuntary petition is filed against "a person."  11 U.S.C. § 303(b).  In order to be an eligible petitioning creditor, the creditor must have a claim, as defined in section 101(5) of the Bankruptcy Code, "against 'such person,' i.e, the debtor."  *Carteret*, 106 B.R. at 770.  Pursuant to section 102(2) of the Bankruptcy Code, a "'claim against the debtor' includes [a] claim against property of the debtor." S. Rep. No. 95-989, at 27-28 (1978).  The legislative history of section 102(2) specifically provides that it was

intended to cover nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally. Thus, such an agreement would give rise to a claim that would be treated as a claim against the debtor personally, for the purposes of the bankruptcy code.

*Id.*

18.     Citing this legislative history, the United States Supreme Court has specifically held that a claim, although enforceable only against a debtor's property, nonetheless is a claim "against the debtor" for purposes of section 102(2) of the Bankruptcy Code. *Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991) ("[W]e understand Congress' intent to be that § 102(2) extend to all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence."). Accordingly, "[t]he Bankruptcy Code makes no distinction between recourse and non-recourse claims" for purposes of determining whether a creditor is eligible to file an involuntary petition in a chapter 11 case. *Carteret*, 106 B.R. at 771.

19.     Similarly, the Second Circuit has recognized that section 102(2) of the Bankruptcy Code provides that a creditor is any person or entity that has a claim against the debtor <u>or</u> the debtor's property. *In re 680 Fifth Ave. Assocs.*, 29 F.3d 95, 98 (2d Cir. 1994) (citing 11 U.S.C. § 102(2) ("'claim against the debtor' includes claim against property of the debtor")). Indeed, as explained by the Second Circuit in *In re PCH Associates*, 949 F.2d 585, 604 (2d Cir. 1991): "Section 1111(b)(1)(A) 'establishes the general rule, with exceptions, that a claim  in a Chapter 11 case secured by a lien on property of the bankrupt estate is to be allowed against the debtor, *as if the claimant had recourse against the debtor,* whether or not by contract or under applicable state law the creditor had that recourse. '" (quoting *In re Tampa Bay Assoc., Ltd.,* 864 F.2d 47, 49 (5th Cir. 1989)).

20.     Zohar-I cites none of the foregoing authorities.  It instead cites a Connecticut case for the proposition that "a non-recourse secured creditor could not be the sole petitioning creditor

13

in an involuntary case." Motion at ¶ 18 (citing *In re Allen-Main Assocs., Ltd. P'ship*, 218 B.R. 278 (Bankr. D. Conn. 1988), *aff'd*, 223 B.R. 59 (B.A.P. 2d Cir. 1998)). Respectfully, Zohar-I's citation to *Allen-Main* is very misleading. That case involved a chapter 7 case, which is fundamentally different from a chapter 11 case. Indeed, on appeal, the Bankruptcy Appellate Panel distinguished *East-West Associates* in emphasizing the distinction between chapter 7 and chapter 11 cases. *See CC Britain Equities L.L.C. v. Allen-Main Assocs. Ltd. P'ship (In re Allen-Main Assocs. Ltd.)*, 223 B.R. 59, 63 (B.A.P. 2d Cir. 1998).

> It is true that in [a] chapter 11 the Code does not make a distinction between recourse and nonrecourse claims. Code § 1111(b)(1) allows a deficiency claim, whether the underlying debt is recourse or nonrecourse. . . .
>
> However, Section 1111(b) applies only to proceedings under Chapter 11 of the Bankruptcy Code. For cases under chapter 7, Section 502(b)(1) rejects allowance of claims for nonrecourse obligations. Specifically, the legislative history with respect to the amendment of Code § 502(b)(1) in 1978 indicates that a claim is to be disallowed
>
>> to the extent that such claim is unenforceable against the debtor and unenforceable against property of the debtor. This [amendment] is intended to result in the disallowance of any claim for deficiency by an undersecured creditor on a **nonrecourse** loan or under a State antideficiency law, **special provision for which is made in section 1111**, since neither the debtor personally, nor the property of the debtor is liable for such a deficiency.

*Id.* at 63 (bolding of "nonrecourse" in original; bolding of remaining language added).

21.    In short, Patriarch XV qualifies as a petitioning creditor by virtue of sections 102(2) and 1111(b)(1) of the Bankruptcy Code. Zohar-I has otherwise failed to contest any of the other aspects of these petitions, including the fact that Patriarch XV is undersecured. Indeed, there can be no legitimate dispute as to Patriarch XV's undersecured status: Patriarch XV acquired $286.5 million face amount of subordinated debt from an un-related third party in an arms-length transaction – the third party had put the debt up for open bid – for only

approximately 35 cents on the dollar.[4]   Accordingly, this Court should enter orders for relief

under section 303(h) of the Bankruptcy Code.

**B.     Zohar-I Has Failed To Carry Its Burden of Proving
That These Chapter 11 Cases Should Be Dismissed**

22.     While Zohar-I seeks dismissal of these cases, nowhere does it discuss or cite any

statutory authority in support of its assertions.  Zohar-I cites section 305 of the Bankruptcy Code

with respect to its request for abstention, addressed below, but Zohar-1 presumably seeks

dismissal pursuant to section 1112 of the Bankruptcy Code, which allows a court, in the exercise

of broad discretion, to dismiss a chapter 11 petition "for cause."  However, whichever statute or

standard applies, Zohar-I has failed to carry its burden.  Patriarch XV addresses dismissal under

section 1112 in this section, and dismissal/abstention under section 305 below.

23.     Dismissal for cause under section 1112 is an extreme remedy absent some sort of

"'smoking gun,' indicating an 'overt intent to inconvenience or frustrate creditors' rights beyond

the congressionally permitted limits . . . .'"  *PNC Bank, N.A. v. Park Forest Dev. Corp. (In re*

*Park Forest Dev. Corp.)*, 197 B.R. 388, 394 (Bankr. N.D. Ga. 1996) (quoting *Sentry Bank &*

*Trust v. Goulding Place Developers, Inc. (In re Goulding Place Developers, Inc.*), 99 B.R. 493,

499 (Bankr. N.D. Ga. 1989)). The term "cause" is not defined in the Bankruptcy Code, but

section 1112(b)(4) provides a non-exhaustive list of events warranting dismissal of a petition for

cause.  *See* 11 U.S.C. 1112(b)(4); *see also C–TC 9th Ave. P'ship v. Norton Co. (In re C–TC 9th*

*Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997) (evaluating a prior version of section 1112 and

characterizing the list of events warranting dismissal for cause as "illustrative" but "not

exhaustive"); *In re Soundview Elite, Ltd.*, 503 B.R. 571, 580 (Bankr. S.D.N.Y. 2014), *appeal*

---

[4] *See Whalen Declaration* at ¶ 3.

*dismissed*, 512 B.R. 155 (S.D.N.Y. 2014), *aff'd*, 597 F. App'x 663 (2d Cir. 2015); *In re Century/ML Cable Venture*, 294 B.R. 9, 34 (Bankr. S.D.N.Y. 2003).

24.     Zohar-I's theory for dismissal in this case presumably is that the petitions were filed in bad faith.    Although not explicitly enumerated in section 1112(b)(4), it is well-established in this Circuit that cause for dismissal may also be found on the basis of bad faith. *See C–TC 9th Ave. P'ship*, 113 F.3d at 1311;  *In re Century/ML Cable Venture*, 294 B.R. at 34; *In re Soundview Elite, Ltd*., 503 B.R. at 580.    That being said, this basis for dismissal is to be used "sparingly" and only in "extraordinary circumstances."  *In re Century/ML Cable Venture*, 294 B.R. at 34; *see also In re 68 W. 127 St., LLC*, 285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002); *In re Sletteland*, 260 B.R. 657, 662 n.2 (Bankr. S.D.N.Y. 2001); *In re Syndicom Corp.*, 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001); *In re D&F Meat Corp.*, 68 B.R. 39, 40 (Bankr. S.D.N.Y. 1986).

25.     To establish bad faith, a showing must be made <u>both</u> (i) that the reorganization process is objectively futile <u>and</u> (ii) that the petitioning creditor acted in subjective bad faith in filing the petition.  *See C-TC 9th Ave. P'ship*, 113 F.3d at 1309-10; *In re Gen. Growth Props., Inc.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009); *In re MBM Entm't, LLC*, 531 B.R. 363, 408 (Bankr. S.D.N.Y. 2015); *In re Kingston Square Assocs.*, 214 B.R. 713, 738 (Bankr. S.D.N.Y. 1997).  As the moving party, Zohar-I has the burden of producing evidence that there is bad faith warranting dismissal.   *See In re MBM Entm't, LLC*, 531 B.R. at 408.  And its burden is a "heavy one, requiring proof by at least a preponderance of the evidence."  *In re Reveley*, 148 B.R. 398, 406 (Bankr. S.D.N.Y. 1992).

26.     Critically for Zohar-I, bankruptcy judges in this and other Districts have held that the filing of a petition, even if arguably in derogation of contractual restrictions on the commencement of bankruptcy filings, does not constitute bad faith warranting dismissal.  *See In*

*re Kingston Square Assocs.*, 214 B.R. 713 at 736; *In re Gen. Growth Props., Inc.*, 409 B.R. at 65;

*In re Hous. Reg'l Sports Network LP*, 505 B.R 468, 479-483 (Bankr. S.D. Tex. 2014).  To the

contrary, where, as here, "the primary motivation" of the petitioning creditor is to "prevent

further dissipation of assets through foreclosure in an attempt to facilitate an orderly workout

among all the creditors," then bad faith should not be found.  *In re Kingston Square Assocs.*, 214

B.R. at 736.

>    **1.    Contractual Restrictions on Bankruptcy Filings
>          Are Irrelevant In Determining Whether Orders For
>          <u>Relief Should Be Entered Granting Involuntary Petitions</u>**

27.    Zohar-I's arguments in support of dismissal can be summarized as follows:  orders

for relief should not be entered or, if so, these cases should be dismissed, because (i) the

indenture governing Zohar-I's obligations ostensibly preclude noteholders from filing

involuntary petitions, and (ii) entry of orders for relief would undermine the "expectations and

practices in [structured finance] markets."  Motion at ¶ 3.  Zohar-I is wrong on both counts.

There is nothing in the Bankruptcy Code, nor has Zohar-I identified any court decision, that

suggests that an involuntary petition is invalid solely by virtue of a term in an indenture that

purports to prohibit a creditor from protecting its interests via the bankruptcy process.  To the

contrary, as long as an involuntary petition is filed by an eligible creditor and the debtor is

generally not paying its debts as they come due, then the court "<u>shall</u> order relief against the

debtor."  11 U.S.C. § 303(h) (emphasis added).

28.    As described above, Patriarch XV is an eligible creditor by virtue of its deficiency

claim created by sections 102(2) and 1111(b) of the Bankruptcy Code.  And Zohar-I has not

suggested that Patriarch XV is fully secured, that Zohar-I has at least 12 creditors, or that Zohar-I

is not paying its debts as they come due.[5]  To the contrary, there is no dispute that Zohar-I's

obligations matured by their terms on November 20, 2015.  It is irrelevant that Zohar-I or any

other party may believe that it had contractual expectations that Zohar-I could not become the

subject of an involuntary bankruptcy proceeding.  Such party has whatever contractual remedies

it believes it may have.  But those remedies have no place in the statutory scheme governing the

requirements for entry of orders for relief in involuntary bankruptcy cases.  Because the basic

elements for entry of orders for relief have been satisfied here, this Court should grant the

involuntary petitions.

### 2.    Zohar-I Has Failed To Carry Its Burden Of Showing Objective and Subjective Bad Faith

#### (a)    Reorganization of Zohar-I Is Not Objectively Futile

29.    As stated above, a party seeking dismissal of a bankruptcy case as a bad faith

filing must carry its burden of showing <u>both</u> that the debtor's reorganization prospects are

objectively futile and that the petitioner acted in subjective bad faith in filing the petition.  Zohar-

I does not even address the objective requirement in its papers.  However, shortly after filing

these involuntary cases, Patriarch XV advised representatives of Zohar-I that Patriarch XV

intends to propose a Chapter 11 Plan of Reorganization For Zohar-I (the "<u>Plan</u>") and a

Disclosure Statement Accompanying Chapter 11 Plan of Reorganization (the "<u>Disclosure

Statement</u>") for the restructuring of Zohar-I's affairs.  The Plan will be straightforward.  It will

contain only two classes of impaired creditors:  (i) a class comprised of the A-1 and A-2 Notes

issued by Zohar-I and held by MBIA, and (ii) a class comprised of the A-3 Notes held by

---

[5]    *See Whalen Declaration* at ¶¶ 2 and 3.

18

Patriarch XV.  As noted above, there is no dispute that the A-1 Notes and A-2 Notes are over-secured.  Accordingly, the Plan will propose to pay MBIA in full.

30.     Under the Plan, the restructured A-3 Notes held by Patriarch XV will be fully subordinated to the A-1 and A-2 Notes.  Accordingly, Patriarch XV will receive no payments on the A-3 Notes until the A-1 and A-2 Notes are paid in full.  The B-Notes and Preference Shares in Zohar-I held by other entities owned and controlled by Ms. Tilton will be retained by such entities.  Patriarch XV will be prepared at confirmation to demonstrate sufficient value to pay MBIA in full; that the Plan is feasible; and that each of the other requirements of sections 1123 and 1129 of the Bankruptcy Code are satisfied.  *Compare In re Gen. Growth Props., Inc.*, 409 B.R. at 65 (noting that bankruptcy-remote debtors need not show ability to confirm plan to defeat motion to dismiss; burden is on party seeking dismissal that reorganization is objectively futile).

31.     The Cayman Islands directors have not questioned or challenged, in any respect, Zohar-I's reorganization prospects, let alone proven that a restructuring of Zohar-I is objectively futile.  Their failure to come forth with anything on this point is fatal to their motion.  As noted above, a party seeking dismissal must carry its burden of showing <u>both</u> objective futility and subjective bad faith.  Because Zohar-I has not even touched upon objective futility in its papers, its motion should be denied.

**(b)     A Purported Breach Of An Anti-Petition Covenant
Does Not Constitute Subjective Bad Faith**

32.     Zohar-I's motion largely hinges on the bald assertion that the indenture governing Zohar-I's notes purport to prohibit holders of the notes from filing an involuntary petition; that this covenant, in and of itself, mandates dismissal.  Respectfully, that simply is not the standard for determining subjective bad faith.  To the contrary, "bad faith will not normally be found where the primary motivation of petitioning creditors [is] to prevent further dissipation of assets

19

through foreclosure in an attempt to facilitate an orderly workout among all the creditors." *In re Kingston Square Assocs.*, 214 B.R. 713 at 736; *see also In re Gen. Growth Props., Inc.*, 409 B.R. at 69 (denying motion to dismiss petition on the basis of bad faith, because, *inter alia*, petitioner established that the filings were designed to "preserve value for the Debtors' estates and creditors"); *see also In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 181 (Bankr. D.N.J. 2002) (denying motion to dismiss petition filed by solvent debtor in order to reject contract that was subject of specific performance suit).

33.    Here, there is no dispute that Patriarch XV's "primary motivation" is to "prevent further dissipation" of Zohar-I's assets through MBIA's efforts to seize them for itself, and to "facilitate an orderly workout" among both Patriarch XV and MBIA under the auspices of this Court.   As pointed out above, Patriarch XV has already drafted a Plan and Disclosure Statement, and is prepared to file them as soon as an order is entered terminating Zohar-I's exclusivity periods.   Zohar-I makes absolutely <u>no</u> effort to contest Patriarch XV's good faith motivation. Without even addressing the subject, Zohar-I clearly has failed in carrying its burden that these cases were filed in subjective bad faith.

34.    Moreover, Zohar-I fails to cite authority from this and other Districts that unequivocally hold that a petitioning creditor has not acted in subjective bad faith, <u>even if</u> it files involuntary petitions in purported breach of either the letter or spirit of contractual restrictions on the filing of bankruptcy petitions.   For example, in *In re Kingston Square Assocs.*, Chief Judge Brozman denied motions to dismiss involuntary petitions that had been admittedly orchestrated by the debtors' insider with the debtors' creditors in direct contravention of charter provisions that restricted the debtors' ability to file voluntary petitions.   214 B.R. 713 (Bankr. S.D.N.Y. 1997).   In particular, Judge Brozman stated that the coordinated efforts among the insider and

creditors did not constitute a fraudulent or deceitful purpose; "[r]ather, the filing of these cases was undertaken to prevent the Movants from continuing on their path of foreclosure which threatened to wipe out the claims of the Debtors' unsecured creditors and the interests of its limited partners." *Id*. at 734.

35.     Judge Brozman continued:  "[t]he worst that the Movants have established is that the Respondents coordinated their efforts to perform an end run around the bylaw provision that restricted the Debtors from filing voluntary petitions.  I do not find that, standing alone, to constitute a fraudulent intent vis-à-vis the court's process."  *Id*. at 734-35.  Similarly, the worst that can be said here is that Patriarch XV breached a provision in a pre-petition indenture relating to involuntary filings.  But that is insufficient where, as here and as in *Kingston*, it is undisputed that Patriarch is primarily motivated by a desire to avoid foreclosure and the loss of value, and is motivated to pursue an orderly workout under the auspices of a bankruptcy judge.

> The Movants may feel bruised because the [petitioning creditors] outmaneuvered what the Movants thought was an iron-clad provision in the corporate by-laws preventing a bankruptcy filing, but this does not mean that, without more, the petitions must be dismissed.

*Id*. at 736.

36.     Judge Brozman also focused on the fact that there did not appear to be a functioning estate fiduciary in *Kingston*, which further weighed in favor of retaining bankruptcy jurisdiction.  Similarly here, the Cayman Islands directors have played, at best, a nominal role in the affairs of Zohar-I, and they do not currently exercise any semblance of fiduciary duty for the benefit of Zohar-I's stakeholders.  They played no role in prepetition restructuring negotiations; have not contested Patriarch XV's motion to terminate exclusivity; and have not suggested that they will pursue a plan for restructuring Zohar-I's affairs.  MBIA instead is the "Controlling Party" under the applicable documents.  Yet it has no fiduciary duties either, and hence, cannot

21

be trusted to maximize value for anyone but itself.  The only check to ensure value protection and maximization is the equitable jurisdiction of this Court.

37.     This Court cited *In re Kingston Square* favorably in *In re 68 West 127th Street, LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002).  In that case, this Court denied a mortgagee's motion to dismiss a chapter 11 case as a bad faith filing, even though the petition was filed by a debtor corporation with no income and no employees, and with only one asset – an empty and derelict residential building – that the debtor acquired shortly before it was scheduled for foreclosure. *Id.* This Court made several observations in *In re 68 West 127th Street* that are especially relevant here:

> [S]everal courts have observed that resort to bankruptcy to stave off foreclosure is consistent with bankruptcy's goals of preserving going concerns and maximizing value:
>
>> Filing a bankruptcy petition with the intent to frustrate creditors does not by itself establish an absence of intent to seek rehabilitation.  Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense be "frustrated" when their debtor files a bankruptcy petition. In reality, there is a considerable gap between delaying creditors, on the eve of foreclosure and the concept of abuse of judicial purpose. . . .
>
> Similar observations may be made about other commonly listed bad faith factors. *See, e.g.*, *In re Kingston Square Assocs.*, 214 B.R. 713, 734, 736-37 (Bankr. S.D.N.Y. 1997) (eve-of-foreclosure filing was not in bad faith, despite circumvention of 'bankruptcy remote' board structure imposed by primary, secured creditor, because bankruptcy preserved value for handful of unsecured creditors and debtor's limited partners) . . . .

*Id.* at 845-46.

38.     Another case that Zohar-I fails to cite in its papers is in *In re Houston Regional Sports Network LP*, which followed Judge Brozman's reasoning in *Kingston*.  505 B.R. 468 (Bankr. S.D. Tex. 2014).   In *Houston Regional*, affiliates of a debtor filed involuntary petitions against the debtor, whose operating agreement required the unanimous consent of its managers to

file a voluntary petition. One of the debtor's owners sought dismissal of the involuntary petitions as bad faith filings. The Court denied the request, holding that a desire to preserve value was sufficient to overcome charges of bad faith. Significantly for these cases, the Court observed:

> The Court concludes that an end run of the provision [restricting bankruptcy filings] does not necessarily lead to a conclusion that Comcast [the petitioning creditor] acted in bad faith. Not every contractual breach is done in bad faith. If Comcast made an end run around the contract (or even breached it), then [it] may be liable for damages. [But t]hat is a far cry from bad faith.
>
> The evidence reflects that the original involuntary petition was orchestrated by Comcast Partner for the purposes of preserving value and rehabilitating [the debtor]. . . . Even if done in breach of the spirit of the governance documents, and in collusion with [others], the filing was not done in bad faith. A thoughtful opinion in a similar situation was issued by the United States Bankruptcy Court for the Southern District of New York. *In re Kingston Square Associates*, 214 B.R. 713 (Bankr. S.D.N.Y. 1997). In sum, when the petitioning creditors act with the intention of preserving the Estate, the sole fact that a voluntary filing was precluded by state-law organizational documents will not make the involuntary petition one filed in bad faith.

*Id*. at 478.

39.     Similarly, that MBIA or any other party may believe it has a breach of contract claim on account of the terms of Zohar-I's indenture is irrelevant where, as here, the petitioning creditor has a legitimate purpose to protect value, and no one else – neither MBIA nor Zohar-I's Cayman directors – can be relied on to do so. *See In re Am. Globus Corp.*, 195 B.R. 263, 265-66 (Bankr. S.D.N.Y. 1996) (Chief Judge Brozman) (denying motion to dismiss petition, even though it was filed without proper authority, where party seeking dismissal only sought to protect its own interests, and was not acting in furtherance of any fiduciary interests); *Management Techs., Inc. v. Morris*, 961 F. Supp. 640, 648-49 (S.D.N.Y. 1997) (commencement of insolvency proceeding by insider without board authority may be appropriate where existence of corporation is very much at risk).

40.     In short, restrictions on the ability of a debtor to be placed into bankruptcy do not mandate dismissal; such restrictions are not the "be-all, end-all" of the analysis and should instead be viewed very skeptically.  As Judge Gropper said in *In re Quad-C Funding LLC*, 496 B.R. 135, 143-44 (Bankr. S.D.N.Y. 2013), "[t]he Court recognizes that some courts have applied—without reservation—supermajority and other clauses that are designed to impede a debtor's entry into bankruptcy.   These clauses would permit minority equity holders to hold a bankruptcy filing hostage even where there is no dispute that there should be a judicial dissolution or reorganization of the debtor." *Id.* (citation omitted).

> The mischief of such clauses is well-illustrated by the present case: if Crossroads obtained dismissal, it might be able to continue to burden creditors with the costs of its own litigation, prevent the Debtor from engaging in legitimate business operations, and avoid the risk of a potentially meritorious preference suit against it.  As has been stated, "there is no reason to treat bankruptcy as a bogeyman, as a fate worse than death—even, as the majority does, as a 'penalty'. . . ."

*Id.* (citation omitted).

41.     Zohar-I cites only two cases in its answer and motion in support of dismissal. Both are distinguishable.  In particular, Zohar-I cites *SEC v. Byers*, 609 F.3d 87 (2d Cir. 2010), in support of the sweeping proposition that "there is no unwaivable right to file an involuntary bankruptcy petition." *Id.* at 92.  Patriarch XV is not suggesting otherwise.  More importantly, *Byers* is irrelevant.  The company in Byers was in receivership under the jurisdiction of the Securities and Exchange Commission ("SEC").  In that unique context, the Second Circuit held that the District Court properly exercised its discretion in issuing an anti-litigation injunction barring bankruptcy filings by anyone other than the receiver, as any such other filings would, if made, disrupt the receiver's administration of the company's assets.  Zohar-I, by contrast, is not in federal receivership under the jurisdiction of a federal agency.  There is no forum that will

ensure protection of Zohar-I's assets other than this Court.    Accordingly, *Byers* clearly is completely inapplicable here.

42.    Zohar-I also cites *In re DB Capital Holdings, LLC*, 463 B.R. 142 (10th Cir. 2010) in support of its motion to dismiss.  However, that case – cited unfavorably by Judge Gropper in *Quad-C Funding, LLC*, 496 B.R. at 143 – involved a limited liability company whose members agreed in the company's constituent documents not to place the company into bankruptcy.  There seems to be little question in the case law that, absent equitable considerations, bankruptcy courts should look to state corporate law in the first instance to determine an entity's authority to commence a bankruptcy petition on its own behalf, and that a petition filed without proper corporate authority should be dismissed as an *ultra vires* act.  *Price v. Gurney*, 324 U.S. 100, 106 (1945).  But this proposition is totally inapplicable here, as no terms of Zohar-I's constituent documents are implicated, and these involuntary cases do not involve any question about whether Zohar-I's directors acted with property authority under Cayman Islands law.

### (c)    Policies Respecting The Securities Markets And Enforcement of Commercial Agreements Do Not Warrant Dismissal Of These Cases

43.    Finally, Zohar-I asserts that the bankruptcy filing of limited purpose CLO's such as Zohar-I is "contrary to expectations and practices in structured finance markets and would unduly disrupt pricing, risk analysis and trading in a global industry comprising more than two trillion dollars of outstanding issuances." Motion at ¶ 27.  This policy is insufficient to mandate dismissal of the petitions here.   Indeed, <u>every</u> bankruptcy filing defeats numerous parties' commercial expectations; <u>no</u> one enters into a business venture in the hope that it will one day end up in front of a bankruptcy judge.  Moreover, every bankruptcy filing breaches contracts – in large cases, thousands of contracts are breached.  But breaches of anti-bankruptcy clauses are

irrelevant. *Compare* 11 U.S.C. § 356(3) (ipso facto clauses are unenforceable). The ostensible policies of the structured finance industry therefore cannot override the legitimate motivation of a creditor protecting its interests by seeking bankruptcy protection.

44.    In *In re Lehman Brothers*, Judge Peck similarly was confronted with an industry-wide argument that failure to enforce certain contractual waivers in the documents governing so-called "synthetic CDO's" would undermine a multiple-trillion dollar market. *Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. (In re Lehman Bros. Holdings, Inc.)*, 422 B.R. 407 (Bankr. S.D.N.Y. 2010). Judge Peck "recognize[ed] that there is an element of commercial expectation that underlies" the argument that the parties' contracts should have been enforced. *Id.* at 422 n.9. "[The debtor] was instrumental in the development and marketing of the complex financial structures that are now being reviewed from a bankruptcy perspective. The Court assumes that a bankruptcy affecting any of the Lehman entities was viewed as a highly remote contingency at the time that the Transaction Documents were being prepared[, and c]apital was committed with this concept in mind." *Id.* However, the "Bankruptcy Code appl[ies] uniformly, regardless of prepetition market expectations. [It] exist[s] and should be enforced to preserve property interests for the benefit of all creditor constituencies." *Id.*

45.    Judge Peck's observations apply equally here: the asserted policy concerns of the Cayman Islands CLO industry cannot override a bankruptcy policy that protects the legitimate aims of creditors seeking to protect their interests. *See also In re Gen. Growth Props., Inc.*, 409 B.R. at 65-68 (denying lenders' motion to dismiss the chapter 11 cases of bankruptcy-remote entities even though such entities were solvent and were placed into bankruptcy upon the vote of directors who had replaced original directors on the eve of the filing in derogation of the lenders' market expectations). To hold otherwise would be to adopt a rule that would easily lead to

motions to dismiss in virtually every case.  That is not the law, and Zohar-I's suggestions to the contrary should not be given any weight.  Indeed, numerous so-called "bankruptcy remote" entities have properly become the subject of U.S. bankruptcy proceedings, despite parties' pre-bankruptcy expectations.  *See In re Kingston Square,* 214 B.R. 713; *In re Gen. Growth Props., Inc.*, 409 B.R. 43; *In re Zais Inv. Grade Ltd. VII*, 455 B.R. 839 (Bankr. D.N.J. 2011); *In re Hous. Reg'l Sports Network, L.P.*, 505 B.R. 468; *In re Extended Stay Inc.*, Case No. 09-13764 (JLG) (Bankr. S.D.N.Y. June 15, 2009).

46.    Lastly, Zohar-I cites non-bankruptcy cases construing New York law that hold that waivers in commercial and financial contracts should be enforced.  By itself, this is an unremarkable proposition.  But as noted above, it is irrelevant to the standards for granting involuntary petitions.  It is also doesn't control the determination whether a bankruptcy petition was filed in bad faith.  As stated in *Kingston* and *Houston Regional* and the other cases cited above, even assuming a breach of such a waiver, what matters is not the breach, but whether the petitioning creditor had a legitimate aim to preserve value.  Patriarch XV's legitimate aim to preserve value and restructure Zohar-I has not been questioned here.  Accordingly, Zohar-I's citations to New York law for boilerplate propositions adds nothing to the analysis.[6]

---

[6]    Moreover, a contractual waiver does not, under New York law, result in a party's surrender of all its rights for all time.  Courts interpreting New York law have held that a contractual waiver cannot be invoked if the result would be to insulate a party from its own wrongful conduct, including conduct which is fraudulent, grossly negligent, malicious or undertaken in bad faith.  *See Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 18 N.Y.3d 675, 683 (2012) ("[I]t is New York's public policy that a party cannot 'insulate itself from damages caused by grossly negligent conduct.'") (citation omitted); *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385 (1983)  ("[A]n exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith."); *Turkish v. Kasenetz*, 27 F.3d 23, 27-28 (2d Cir. 1994) ("It is well settled that parties cannot use contractual limitation of liability clauses to shield themselves from liability for their own fraudulent conduct.").

*(cont'd)*

47.     In sum, the terms of the indenture governing the notes issued by Zohar-I do not have any bearing on whether Patriarch XV has satisfied the standards for entry of orders for relief under section 303(h) of the Bankruptcy Code.  Moreover, Zohar-I has failed to satisfy its burden of proving either objective or subjective bad faith in the filing of these petitions.  In particular, it has failed to prove that restructuring of Zohar-I is objectively futile.  And a mere breach of an anti-filing covenant does not constitute subjective bad faith where, as here, the petitioner has a legitimate motive to preserve value, a motive that Zohar-I has not questioned.  Asserted policies favoring enforcement of structured finance agreements, including related covenants and waivers, do not outweigh bankruptcy policy favoring the restructuring of debtors' affairs in order to enhance value for all stakeholders.

48.     The motion to dismiss should be denied.

**C.     Zohar-I Has Failed to Carry Its Burden of Establishing
        That Abstention Is Proper Under 11 U.S.C. § 305**

49.     Section 305(a) of the Bankruptcy Code allows a court to abstain from a bankruptcy case if the interests of creditors and the debtor would be better served by abstention.  Abstention is "an extraordinary remedy that should be used sparingly and not as a substitute for a motion to dismiss under other sections of the Bankruptcy Code [such as section 1112]."  2 Alan N. Resnick & Henry J. Sommer, Collier On Bankruptcy at ¶ 305.02 (16th ed. rev. 2015); *see also*

---

*(cont'd from previous page)*

As outlined in detail in Patriarch XV's motion to terminate exclusivity, MBIA has been engaged in a long course of bad faith conduct that resulted in Patriarch XV spending over $100 million to acquire notes issued by Zohar-I, an acquisition that Patriarch XV made based upon the legitimate expectation, fraudulently induced by MBIA, that in acquiring the notes, Patriarch XV had paved the way to a successful, consensual restructuring of Zohar-I.  That legitimate expectation has now been frustrated by MBIA, thereby jeopardizing value for Patriarch XV, the operating companies, and the stakeholders of Zohar-II and Zohar-III.  For this Court to grant Zohar-I's motion to dismiss – a motion filed by Cayman directors with no skin in the game – would be to insulate MBIA's wrongful conduct in derogation of New York law.

*In re Paper I Partners, L.P.*, 283 B.R. 661, 678 (Bankr. S.D.N.Y. 2002) ("A motion under section 305(a) to dismiss a petition or suspend the bankruptcy case is a form of extraordinary relief.  Abstention pursuant to section 305 of the code is a power that should only be utilized under extraordinary circumstances." (citations omitted)); *In re Corino*, 191 B.R. 283, 287 (Bankr. N.D.N.Y. 1995) (finding that the moving party had not met "the heavy burden of proof" to succeed on a section 305(a) motion).

50.     Zohar-I, as the moving party, has the burden of proof to demonstrate that abstention is appropriate under section 305 of the Bankruptcy Code.  *See, e.g., In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462-63 (Bankr. S.D.N.Y. 2008).  To satisfy its burden, Zohar-I must demonstrate that the interests of both the creditors and the debtor would be better served by dismissal or abstention.  *See Eastman v. Eastman*, 188 B.R. 621, 624-25 (B.A.P. 9th Cir. 1995) (reversing order dismissing case because lower court failed to make finding that dismissal was in interests of both the debtor and its creditors); *In re Aerovias Nacionales de Colom. S.A. Avianca*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003) (finding no basis to dismiss or suspend proceedings because debtor would not be better served and creditors were well served by bankruptcy proceeding).  Moreover, because this standard is not a mere balancing test but requires both the debtor's interests _and_ the interests of the debtor's creditors to be better served by dismissal, "few fact patterns fall within section 305(a)."  2 Collier on Bankruptcy at ¶ 305.02[1].

51.     This Court previously has considered motions for abstention under section 305 and the relevant considerations in determining whether to grant or deny same.  *In re Persico Contracting & Trucking, Inc.*, No. 10-22736 (RDD), 2010 WL 3766555 (Bankr. S.D.N.Y. Aug. 20, 2010).  Those considerations weigh against abstention here, i.e., the petitions here were filed by the largest creditor, not a "small number of creditors"; there is no "state insolvency

29

proceeding or other out-of-court arrangement pending"; there is no other "proceeding [that] has proceeded so far . . . that it would be costly and time consuming to start afresh with the Federal bankruptcy process"; and there is no "alternative means of achieving an equitable distribution of assets." *Id*. at *4.

52.    In *Persico*, this Court held that that the most important consideration in determining whether to abstain is "the purpose for which bankruptcy jurisdiction has been sought," i.e., abstention may be appropriate in two-party disputes where the petitioning creditor is merely using the process as a "debt collection tool" against the debtor. *Id*.  There are only two primary parties to this case – MBIA and Patriarch XV – but as outlined above, Patriarch XV has filed these cases not merely as a debt collection tool, but rather (i) to protect Zohar-I, Zohar-II, Zohar-III, the operating companies, and all the respective noteholders from potential loss of value and (ii) to maximize value and restructure Zohar-I in an orderly manner.[7]

53.    As noted in the Preliminary Statement above, Patriarch XV is aware of only one other case involving an involuntary chapter 11 petition against a CLO. *See In re Zais Inv. Grade Ltd. VII*, 455 B.R. 839.  Zohar-I affords no meaningful analysis of that case in its motion.  Yet it is very significant for these cases.  As in these cases, there were only two creditors in *Zais*, and one of them sought abstention:

> Movants' essential contention is that the petitioning creditors are trying to use the Bankruptcy Code to avoid the limitations of the indenture, and that is an improper purpose for seeking bankruptcy jurisdiction.  To their knowledge no other CDO

---

[7]    As noted above, such purposes also are paramount in considering whether to dismiss a case under section 1112 of the Bankruptcy Code, and overrides any contractual or other restrictions on bankruptcy filings.  *In re 68 West 127th Street*, 285 B.R. at 838 (declining to dismiss petition even though case involved a two-party dispute); *In re Kingston Square Assocs.*, 214 B.R. at 724, 736-37 (eve-of-foreclosure filing was not in bad faith, despite circumvention of "bankruptcy remote" board structure imposed by primary, secured creditor, because bankruptcy preserved value for handful of unsecured creditors and debtor's limited partners).  Because dismissal is not warranted, abstention is not warranted, either.

> has been in bankruptcy because CDO's are designed to avoid bankruptcy. . . .
> While not deciding if the plan is confirmable, the court sees no reason why the
> case should be dismissed before confirmation has been heard. Bankruptcy is
> historically a creditors' remedy allowing for the orderly liquidation of assets for
> the collective benefit of all creditors. That is the avowed purpose of this case . . . .

*Id.* at 847 (citation omitted). The court in *Zais* denied the motion to abstain; for the same reasons, this Court should deny the motion to abstain here. Indeed, the immediate purpose of the bankruptcy filing in *Zais* arguably was significantly more limited than it is here: to allow the petitioning creditor to propose a plan that provided for replacement of the collateral manager. Yet the bankruptcy court in *Zais* found that the petitioning creditors' desire to replace the collateral manager was an entirely legitimate aim under the Bankruptcy Code, as it was ultimately designed to enhance creditor recoveries. *Id.* Patriarch XV shares this same ultimate purpose as the petitioning creditor in *Zais*.

54.    Zohar-I advances only two reasons why abstention is appropriate here. First, it repeats its argument that the CLO industry is best served by keeping Zohar-I out of bankruptcy in accordance with parties' pre-bankruptcy contractual and commercial expectations. However, as stated above, the Cayman Islands directors' desire to enhance their own parochial interests or to advance the CLO industry are woefully inadequate and do not justify dismissal or abstention. Zohar-I is a letter-box entity with no meaningful interests to protect. Accordingly, Zohar-I has not carried its extraordinary burden of establishing that it has any legitimate interests worth protecting under section 305 or otherwise.

55.    Second, Zohar-I says that Patriarch XV's interests can be adequately protected in its state law fraud suit against MBIA. Respectfully, an entity such as Zohar-I, with no legitimate interests in this matter, has no place volunteering its comments on what it thinks is best for other parties who have all the economic exposure. More importantly, a state court law suit is no

substitute for the equitable jurisdiction of a bankruptcy court.  Patriarch XV is attempting to protect its interests in numerous operating companies, many of whom owe obligations not only to Zohar-I, but also to Zohar-II and Zohar-III.  The state court law suit is all for naught if MBIA forecloses on Zohar-I's assets and absconds with all the value.  *See In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 525 (Bankr. S.D.N.Y. 1996) (noting that a trial in the state court action was "a long way off" in finding that bankruptcy court forum was appropriate).

56.      In short, Zohar-I has failed to carry its heavy burden of proving that the interests of all of Zohar-I's stakeholders will be better served by abstention.  Its abstention request therefore should be denied.

## CONCLUSION

For the foregoing reasons, Patriarch XV respectfully requests that the Court (i) enter orders for relief granting the involuntary petitions and (ii) enter an order denying Zohar-I's motion to dismiss or, alternatively, to abstain.

Dated:  New York, New York
           December 29, 2015

SKADDEN, ARPS, SLATE, MEAGHER  & FLOM LLP

By:   */s/ Jay M. Goffman*_____
         Jay M. Goffman
         Mark A. McDermott
         Shana A. Elberg
         Christine A. Okike
         Four Times Square
         New York, New York 10036
         (212) 735-3000

 *Counsel to Petitioning Creditor, Patriarch Partners XV, LLC*