BLANK ROME LLP
Rick Antonoff
Andrew B. Eckstein
Leon R. Barson *(pro hac admission pending)*
Josef W. Mintz *(pro hac admission pending)*
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Counsel to Zohar CDO 2003-1, Limited,*
*Zohar CDO 2003-1 Corp. and Zohar CDO 2003-1, LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                           :    Chapter 11
                                                :
**Zohar CDO 2003-1, Limited,**                  :    Case No. 15-23680 (RDD)
                                                :
        **Alleged Debtor.**       :
                                                :
---------------------------------------------------------------x
In re                                           :    Chapter 11
                                                :
**Zohar CDO 2003-1, Corp.,**                    :    Case No. 15-23681 (RDD)
                                                :
        **Alleged Debtor.**       :
                                                :
---------------------------------------------------------------x
In re                                           :    Chapter 11
                                                :
**Zohar CDO 2003-1, LLC,**                      :    Case No. 15-23682 (RDD)
                                                :
        **Alleged Debtor.**       :
                                                :
---------------------------------------------------------------x

**REPLY OF ALLEGED DEBTORS IN FURTHER SUPPORT OF ANSWER AND**
**MOTION FOR AN ORDER DISMISSING INVOLUNTARY CHAPTER 11 PETITIONS**
**OR, IN THE ALTERNATIVE, ABSTAINING PURSUANT TO 11 U.S.C. § 305**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT .....................................................................................................................................4

    I.    PATRIARCH XV HAS NOT DEMONSTRATED ELIGIBILITY TO BE A QUALIFIED PETITIONING CREDITOR UNDER §303(b) OF THE BANKRUPTCY CODE ............................................................................................4

        A.    Holding a "Claim Against the Debtor" Within the Meaning of §102(2) Does Not Confer Eligibility Under §303(b) ......................................4

        B.    Section 1111(b) is not Applicable and Does not Confer Eligibility under §303(b) ....................................................................................................6

    II.    PATRIARCH XV FAILED TO REBUT THE ENFORCEABILITY OF THE WAIVER OF ITS RIGHT TO FILE THE INVOLUNTARY PETITIONS ................................................................................................................9

    III.    ABSTENTION IS APPROPRIATE BECAUSE PATRIARCH XV DOES NOT HAVE A LEGITIMATE BANKRUPTCY PURPOSE .............................12

RESERVATION OF RIGHTS ........................................................................................................13

CONCLUSION ................................................................................................................................14

15-23680-rdd    Doc 14    Filed 01/04/16    Entered 01/04/16 17:22:13    Main Document
Pg 3 of 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barnett v. Jamesway Corp. (In re Jamesway Corp.)*,
 235 B.R. 329 (Bankr. S.D.N.Y. 1999)..................................................................................5, 6

*Carteret Sav. Bank, F.A. v. Nastasi-White, Inc. (In re East-West Assocs.)*,
 106 B.R. 767 (S.D.N.Y. 1989).....................................................................................................5

*CC Britain Equities, L.L.C. v. Allen-Main Assocs. Ltd. Pshp. (In re Allen-Main
 Assocs. Ltd. Pshp.)*,
 223 B.R. 59 (B.A.P. 2d. Cir. 1998)...................................................................................4, 5, 6, 8

*Fourco Glass Co. v. Transmirra Products Corp.*,
 353 U.S. 222 (1957)....................................................................................................................6

*In re 15375 Memorial Corp. v. Santa Fe Minerals, Inc., (In re 15375 Memorial
 Corp.)*, 589 F.3d 605 (3d Cir. 2009) ................................................................................. 12-13

*In re Allen-Main Assocs., Ltd. Pshp.*,
 218 B.R. 278 (Bankr. D. Conn. 1998) .......................................................................................6

*In re Am. Globus Corp.*,
 195 B.R. 263 (Bankr. S.D.N.Y. 1996)......................................................................................10

*In re American Resource & Energy LLC*,
 513 B.R. 371 (Bankr. D. Minn. 2014) ......................................................................................7

*In re DB Capital Holdings, LLC*,
 463 B.R. 142 (B.A.P 10th Cir. 2010)........................................................................................11

*In re DRW Property Co. 82*,
 57 B.R. 987 (Bankr. N.D. Tex. 1986) ........................................................................................7

*In re Green*,
 No. 06-11761-FM, 2007 WL 1093791 (Bankr. W.D. Tex. Apr. 9, 2007) ................................7

*In re Kingston Square Assocs.*,
 214 B.R. 713 (Bankr. S.D.N.Y. 1997).....................................................................................10

*In re Persico Contracting & Trucking, Inc.*,
 No. 10-22736 (RDD), 2010 WL 3766555 (Bankr. S.D.N.Y. Aug. 20, 2010).........................12

ii

137126.01062/101847823v.6

*In re Quad-C Funding LLC*,
   496 B.R. 135 (Bankr. S.D.N.Y. 2013)................................................................................10

*In re Zais Inv. Grade Ltd. VII*,
   455 B.R. 839 (Bankr. D.N.J. 2011) ....................................................................................10

*In re Zarnel*,
   619 F.3d 156 (2d Cir. 2010).................................................................................................6

*Johnson v. Home State Bank*,
   501 U.S. 78 (1991)...............................................................................................................6

*Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*,
   330 F.3d 111 (2d Cir. 2003).................................................................................................6

*Price v. Gurney*,
   324 U.S. 100 (1945).............................................................................................................8

*S.E.C. v. Byers*,
   609 F.3d 87 (2d Cir. 2010).................................................................................................11

*S.E.C. v Huber*,
   702 F.3d 903, 908 (7th Cir. 2012) .....................................................................................12

*Travelers Ins. Co. v. 633 Third Assocs.*,
   1991 WL 236842 *2 (S.D.N.Y. 1991).................................................................................7

**Statutes**

11 U.S.C. § 102(2) ...............................................................................................................2, 4, 5, 6

11 U.S.C. § 303................................................................................................................... passim

11 U.S.C. § 305.................................................................................................................... 1, 12

11 U.S.C. §1111(b) ............................................................................................................. passim

**Other Authorities**

COLLIER ON BANKRUPTCY ¶303.12........................................................................................8

*Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to
   Sections 203(e), 203(f) and 203(k) of the Investment Advisers Act of 1940 and
   Section 9(b) of the Investment Company Act of 1940* .................................................................2

TO:   THE HONORABLE ROBERT D. DRAIN
      UNITED STATES BANKRUPTCY JUDGE

1.      Zohar CDO 2003-1, Limited, Zohar CDO 2003-1, Corp. and Zohar CDO 2003-1, LLC (collectively, the "Zohar Entities"), by their undersigned counsel, submit this reply in further support of their *Answer and Motion of Alleged Debtors For an Order Dismissing Involuntary Chapter 11 Petitions or, in the Alternative, Abstaining Pursuant to 11 U.S.C. § 305* filed on December 14, 2015 [Dkt. 6][1] (the "Motion to Dismiss") and in reply to the *Response And Objection to the Motion to Dismiss* filed by Patriarch Partners XV, LLC on December 29, 2015 [Dkt. 8] (the "Objection").

## PRELIMINARY STATEMENT

2.      The Objection is heavy on rhetoric but light on legal authority. On the rhetorical side, Patriarch XV[2] derides the actions and motives of the Zohar Entities in seeking to enforce the very contractual provisions Lynn Tilton and Patriarch Partners drafted and agreed when they created the Zohar Entities and then touted to the public when they solicited billions of dollars from investors.[3] Having now decided that their interests are no longer served by those agreements, Patriarch XV and Ms. Tilton are playing fast and loose with the Zohar Entities and its investors

---

[1]   Case numbers for each of the involuntary chapter 11 cases are 15-23680-rdd for Zohar CDO 2003-1, Limited; 15-23681-rdd for Zohar CDO 2003-1, Corp.; and 15-23682-rdd for Zohar CDO 2003-1, LLC. To the extent the docket numbers for the same pleadings filed in each case are different from each other, citations to the docket in this Reply "[Dkt. __]" refer to case number 15-23680 and by reference herein are applicable to the corresponding pleadings filed in each of the other cases.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Motion to Dismiss or in the Objection.

[3]   The Objection seeks in several places to impugn the motives of the Zohar-I directors in causing Zohar-I to file the Motion to Dismiss. Those directors are independent professionals who (as Patriarch XV rightly notes) thus far have no personal economic stake in the assets of Zohar-I. In causing Zohar-I to file the Motion to Dismiss, the directors are discharging their duty to enforce the Indenture and contractual arrangements to which the parties agreed. There is no proper basis for the gratuitous attacks on the directors' integrity set out in the Objection and the Court should ignore them. It is also worth noting that two of the three alleged debtors are Delaware entities.

137126.01062/101847823v.6

while also jeopardizing the stability of the entire multi-trillion dollar structured finance market.[4] By ignoring their contractual agreement not to file the Involuntary Petitions and pursuing these involuntary chapter 11 cases for the stated purpose of protecting portfolio companies which they control, it is Patriarch XV and Ms. Tilton who are advancing "parochial interests" at the expense of others. This Court should not allow such conduct to prevail.

3. As to the legal argument, the Objection demonstrates only that Patriarch XV holds a "claim against the debtor" within the meaning of §102(2) of the Bankruptcy Code – an unremarkable proposition that no one disputes. But Patriarch XV has not carried its burden of proving that the claim it holds makes it eligible under §303(b) of the Bankruptcy Code to be a petitioning creditor – namely that it holds an unsecured claim. Patriarch XV also cannot rely on §1111(b), a very narrow Bankruptcy Code provision addressing the allowance and treatment of nonrecourse claims for plan purposes. It is not applicable to, and has no bearing on, eligibility to file an involuntary petition under §303(b).

4. Patriarch XV has chosen not to respond in any meaningful way to the knowing, voluntary and enforceable waiver of its right to file the Involuntary Petitions. Instead, Patriarch XV acknowledges its waiver (Objection at ¶¶ 26, 46) but argues that breaching the Indenture is somehow irrelevant to whether an order for relief should be entered. But the Objection does not cite a single case in which an involuntary bankruptcy was permitted to proceed over a contractual provision prohibiting petitioning creditors from filing.

---

[4] The Court may take judicial notice that the S.E.C. has charged Ms. Tilton, Patriarch XV and other Patriarch companies with improperly valuing and classifying the Zohar Entities' assets, and those of other Zohar CLOs, in violation of their contractual duties under collateral management agreements for the purpose of collecting higher fees. *See Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 203(e), 203(f) and 203(k) of the Investment Advisers Act of 1940 and Section 9(b) of the Investment Company Act of 1940, and Notice of Hearing*, available at https://www.sec.gov/litigation/admin/2015/ia-4053.pdf (last visited Jan. 2, 2016). These charges suggest that this case is not the only time Ms. Tilton and Patriarch have ignored contracts that no longer suit them to protect their own parochial interests.

2

5. Further, its reliance on the mandatory language of §303(h) is misplaced and misleading since (a) Patriarch XV is not a qualified petitioning creditor and (b) the petition in this case obviously has been timely controverted.

6. Finally, Patriarch XV has not demonstrated a legitimate purpose for these cases that should prevent the Court from exercising its discretion to abstain. Patriarch XV puts great weight on an incorrect premise that there is a pending threat of foreclosure and that MBIA will abscond with the Zohar-I assets. That is not the case. First, there is, in fact, currently no foreclosure pending. And any action MBIA may take must be done in accordance with the Indenture which gives the Controlling Party certain rights to direct the *Trustee* with respect to exercising remedies including sales of assets. Second, Patriarch XV asserts in its Objection and Exclusivity Motion that MBIA's exposure to Zohar-II is more than five times that of Zohar-I and there is a high degree of overlap of portfolio companies that are borrowers to both Zohar-I and Zohar-II. While the Zohar Entities do not know MBIA's intentions as the Controlling Party, Patriarch XV has put forth nothing but bald assertions as to MBIA's motives and intent to abscond while, given substantial exposure in Zohar-II, it may be reasonable to conclude that MBIA's interest is to help, and not hurt, the portfolio companies. In any event, the disposition of the collateral is not solely and exclusively within MBIA's control and, this outcome is exactly the remedy contemplated by the transaction documents which Patriarch and Ms. Tilton designed and to which they agreed.

7. Even if MBIA were to take action as the Controlling Party to direct the Trustee to sell Zohar-I's assets, the Indenture gives Patriarch (through its Tilton-controlled affiliate Octaluna, as sole holder of the Class B Notes (*see* Exclusivity Motion ¶9)) the right to purchase the assets for a price equal to or greater than the proposed sale price of such assets. Therefore, if Patriarch believes the assets are being sold for less than their fair value, Patriarch has the absolute right under

3

the Indenture to acquire the assets itself at or above the proposed price, step in as lender to the portfolio companies and capture any higher value the assets may ultimately realize. As such, the Indenture already gives Patriarch XV the protection it purports to seek in these involuntary cases.

8.  For the reasons stated herein and in the Motion to Dismiss, the Zohar Entities respectfully submit that this Court dismiss, or in the alternative abstain from, these chapter 11 cases.

## ARGUMENT

**I.  PATRIARCH XV HAS NOT DEMONSTRATED ELIGIBILITY TO BE A QUALIFIED PETITIONING CREDITOR UNDER §303(b) OF THE BANKRUPTCY CODE**

9.  Patriarch XV does not deny that its claim is non-recourse. *See* Objection at ¶16. It argues, however, that the non-recourse nature of its claim does not bar eligibility under §303(b) because (i) under §102(2) of the Bankruptcy Code a claim against the debtor includes a claim against property of the debtor and (ii) under §1111(b) of the Bankruptcy Code a non-recourse claim is treated as having recourse against the debtor in a chapter 11 case. Neither argument supports the proposition that a holder of solely a non-recourse claim is eligible to file an involuntary petition under §303(b).

**A.  Holding a "Claim Against the Debtor" Within the Meaning of §102(2) Does Not Confer Eligibility Under §303(b)**

10. Section 102(2) of the Bankruptcy Code is not a provision that confers rights upon parties. It is, by its terms, merely precatory – a rule of construction requiring that the phrase "claim against the debtor," when used in the Bankruptcy Code, include a claim against property of the debtor. As noted in the Objection, the legislative history of §102(2) shows that this rule of construction is intended to do nothing more than avoid a situation where a non-recourse secured creditor is deemed *not* to have a claim against the debtor. Objection at ¶17; *see also CC Britain*

4

*Equities, L.L.C. v. Allen-Main Assocs. Ltd. Pshp. (In re Allen-Main Assocs. Ltd. Pshp.)*, 223 B.R. 59, 62 (B.A.P. 2d. Cir. 1998) (concluding from the legislative history of §102(2), that "the only enforceable right to payment that a nonrecourse creditor normally has, although viewed as a claim against the *debtor*, is limited to the value of the *debtor's property*") (emphasis in original) (hereinafter "<u>Allen-Main BAP</u>").

11. The Zohar Entities do not dispute that Patriarch XV holds a claim against them by virtue of being the holder of the Class A-3 Note. It would, however, be a tortured leap of statutory construction to get from that rather unremarkable rule of construction, to the conclusion that a non-recourse creditor holds an unsecured claim within the meaning of §303(b) and is eligible to file an involuntary petition, particularly when the non-recourse creditor in question is the *sole* petitioning creditor, such as Patriarch XV.

12. Patriarch XV cites *Carteret Sav. Bank, F.A. v. Nastasi-White, Inc., (In re East-West Assocs.)* as having made just such a leap – that §102(2)'s rule of construction makes non-recourse creditors eligible to be petitioning creditors under §303(b). *See* 106 B.R. 767, 771 (S.D.N.Y. 1989). With all due respect, the Zohar Entities submit that *East-West Assocs.* was wrongly decided insofar as it holds that non-recourse creditors are qualified petitioning creditors under §303(b). Indeed, in *Allen-Main BAP*, decided nine years later, the Second Circuit B.A.P. declined to follow *East-West Assocs. See Allen-Main BAP,* 223 B.R. at 63. Moreover, *East-West Assocs.* did not involve a *sole* petitioning creditor, as does the case at bar and, in any event, is not binding on this Court. *See Barnett v. Jamesway Corp. (In re Jamesway Corp.*), 235 B.R. 329, 336 n.1 (Bankr.

S.D.N.Y. 1999) ("[W]here the bankruptcy court sits in a multi-judge district, it is not bound by principles of *stare decisis* by the decision of a district judge in that district.").[5]

13.    In contrast to §102(2)'s general precatory rule of construction, §303(b) is an operative statute setting forth specific requirements for filing involuntary petitions, including that petitioning creditors hold unsecured claims. *See* 11 U.S.C. §303(b); *see also In re Allen-Main Assocs., Ltd. Pshp.*, 218 B.R. 278, 280 (Bankr. D. Conn. 1998) *aff'd by Allen Main BAP* ("[f]or the past one hundred years, U.S. bankruptcy statutes have required creditors filing involuntary petitions to hold unsecured debt."). As a specific statute, §303(b) necessarily trumps §102(2) insofar as determining eligibility to file an involuntary petition. *See Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 228 (1957) ("However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment.") (citations omitted).

14.    For the foregoing reasons, §102(2) does not confer eligibility under §303(b) and does not render Patriarch XV a qualified petitioning creditor. *See Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 114 (2d Cir. 2003) (affirming district court ruling that six non-recourse creditors were ineligible to join an involuntary petition under §303(c)) *abrogated on other grounds by In re Zarnel*, 619 F.3d 156 (2d Cir. 2010).

    **B.    Section 1111(b) is not Applicable and Does not Confer Eligibility under §303(b)**

15.    Patriarch XV also shoe-horns an argument that it qualifies as a petitioning creditor by virtue of §1111(b) of the Bankruptcy Code, citing the Second Circuit BAP opinion in *Allen-Main BAP*. Objection at ¶20-21; *Allen-Main BAP*, 223 B.R. at 63. Section 1111(b) addresses a

---

[5] Patriarch XV's reliance on *Johnson v. Home State Bank* as Supreme Court precedent for eligibility under §303(b) is misplaced since that was not an involuntary case and only stands for the proposition that a non-recourse claim is still a claim (501 U.S. 78, 87 (1991)), a proposition not in dispute in this case.

6

very narrow aspect of non-recourse claims, providing for allowance or disallowance of such claim in certain circumstances, "as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse." 11 U.S.C. §1111(b)(1)(A). Because of its narrow application to treatment of a claim for purposes of allowance and disallowance, §1111(b) has no bearing on whether a non-recourse creditor is eligible to file an involuntary petition. *See Travelers Ins. Co. v. 633 Third Assocs.*, 1991 WL 236842 *2 (S.D.N.Y. 1991) (§1111(b) "was not intended as a device for non-recourse creditors to enhance their position under state law – thereby repudiating their bargain – in advance of any bankruptcy proceeding that may or may not take place."); *In re DRW Property Co. 82*, 57 B.R. 987, 992 (Bankr. N.D. Tex. 1986) ("The transformation of non-recourse claims into recourse claims is for distribution only in a Chapter 11 reorganization case where the debtor has been given the power to retain encumbered property (over the objection of the secured creditor) for use in its plan of reorganization. It was obviously not intended by according recourse status to non-recourse claims that the holders of these claims would be given any additional rights under state law.") (internal citations omitted).

16.    Relying on §1111(b) to assert eligibility under §303(b) is putting the cart before the horse. Section 1111(b) would apply only *after* an order for relief is entered, when the claims allowance mechanics of the Bankruptcy Code come into play. It is not applicable before then. It would be anomalous for this Court to apply Bankruptcy Code provisions addressing allowance of claims in Chapter 11 before the Court even enters an order for relief under Chapter 11 in these alleged cases.

17.    As a threshold matter, the eligibility requirements under §303(b) must be determined by state law, not bankruptcy law. *See In re Green*, No. 06-11761-FM, 2007 WL 1093791, at *6 (Bankr. W.D. Tex. April 9, 2007); s*ee also In re American Resource & Energy*

7

*LLC*, 513 B.R. 371 (Bankr. D. Minn. 2014) (holding that eligibility under the "bona fide dispute" standard in §303(b) is determined under non-bankruptcy law). In other words, eligibility has to be determined at the moment immediately before filing, not after; a creditor has to *be* eligible to file, not *become* eligible as a consequence of filing. Just as the authority to file a voluntary petition is governed by state law (*Price v. Gurney*, 324 U.S. 100, 106 (1945)), so too should state law govern whether a creditor meets the requirements of §303(b) to file an involuntary petition – i.e., whether it holds an unsecured claim. Filing an involuntary petition does not mean that §1111(b) will ever come into play. Consequently, it should not be a basis upon which to recharacterize a non-recourse claim for purposes of meeting the §303(b) requirement.

18.     Indeed, the leading bankruptcy law treatise says as much:

> Although section 1111(b)(1)(A) provides that, under certain circumstances in a chapter 11 case, a nonrecourse claim can be allowed as if the holder of the claim had recourse against the debtor, it does not follow that such a holder who is undersecured would be considered as having an unsecured claim for section 303 purposes.

COLLIER ON BANKRUPTCY ¶303.12, n.10. Collier further states that a nonrecourse creditor "may not be the sole petitioning creditor." *Id.* at ¶303.12.

19.     To the extent the Second Circuit B.A.P. suggested otherwise in *Allen-Main BAP* (*see* Objection at ¶20), it said more than it had to and its references to §1111(b) should be treated as *dicta* (and ignored) since it was not a chapter 11 case. *Allen-Main BAP*, 223 B.R. at 63 (acknowledging that "[s]ection 1111(b) applies only to proceedings under Chapter 11 of the Bankruptcy Code" unlike the chapter 7 case in *Allen-Main*).

20.     For the foregoing reasons, §1111(b) is not applicable to the issue of whether a non-recourse creditor is eligible to be the sole petitioning creditor under §303(b).

8

## II. PATRIARCH XV FAILED TO REBUT THE ENFORCEABILITY OF THE WAIVER OF ITS RIGHT TO FILE THE INVOLUNTARY PETITIONS

21. Rather than address whether the non-petition provision in the Indenture constitutes an enforceable waiver of the right to file an involuntary petition, Patriarch XV "presumes" that the Zohar Entities meant to seek dismissal for cause as a bad faith filing and argues, without any supporting authority, that the non-petition provision is irrelevant to determining whether an order for relief should be entered. In the absence of any argument or legal authority in the Objection addressing the non-petition provision of the Indenture or otherwise rebutting enforceability of the waiver, the Involuntary Petitions should be dismissed.

22. Patriarch XV does not deny that the Indenture precludes it from filing the Involuntary Petitions or that it has breached the Indenture by filing the Involuntary Petitions. Objection at ¶26. It argues, however, the non-petition provision is irrelevant because §303(h) of the Bankruptcy Code requires the Court to enter an order for relief if (a) the petition is filed by an eligible creditor (which, as noted above, Patriarch XV is not) and (b) the debtor is not generally paying its debts as they come due. *Id.* Putting aside the question of whether Patriarch XV is an eligible petitioning creditor and accepting that the Zohar Entities have not paid the Notes that matured in November 2015, the Court is not required, on those facts alone, to enter an order for relief.

23. Patriarch XV's obvious and deliberate incomplete quotation of §303(h) in the Objection is misleading and disingenuous. The critical language missing from the quote in the Objection is the part of §303(h) that says "[i]f the petition is not timely controverted." *Compare* Objection at ¶27 *with* 11 U.S.C. §303(h). Section 303(h) only addresses mandatory entry of an order for relief when the involuntary debtor does not challenge the petition. Since the Involuntary

9

Petitions in this case were timely controverted by the Motion to Dismiss, §303(h) is irrelevant and the Court has no statutory mandate to enter an order for relief.

24. In an effort to evade the enforceability of the non-petition provision of the Indenture and Patriarch XV's waiver, the Objection cites cases that Patriarch XV claims stand for the proposition that bankruptcy courts have allowed involuntary cases to proceed in violation of non-petition provisions. But, in fact, none of these cases address enforceability of non-petition provisions and Patriarch XV does not cite a single case in which a bankruptcy court allowed an involuntary case to proceed in violation of contractual prohibitions against the petitioning creditor.[6]

25. For example, in *In re Kingston Square Assocs.*, the independent director, who was contractually prohibited from authorizing a voluntary petition, went out of his way to make sure he complied with the contract, and not breach it, by orchestrating an involuntary filing by parties not bound by a contractual prohibition. *See* 214 B.R. 713 (Bankr. S.D.N.Y. 1997). In *In re Am. Globus Corp.*, again, there was no violation of a restriction on filing bankruptcy. 195 B.R. 263, 266 (Bankr. S.D.N.Y. 1996). The *Am. Globus* court found that the company's by-laws requiring unanimous shareholder consent to file bankruptcy had been effectively modified to remove that requirement. *Id*. at 265. Thus, the filing by fewer than all shareholders was not in contravention

---

[6] *In re Quad-C Funding LLC*, cited at ¶40 of the Objection, is unavailing since the discussion about the validity of restrictions on *voluntary* bankruptcy filings was not an integral element of the holding and was expressly designated as *dicta*. 496 B.R. 135, 143 (Bankr. S.D.N.Y. 2013) ("In light of this holding, there is no need to decide the validity of clauses such as the one at bar that may, in some cases, purport to give minority equity holders a veto over a chapter 11 filing."). Other cases cited in the Objection are also unavailing as they address invalidity of exculpation waivers used to shield fraudulent conduct. Objection ¶46, n.6. The Zohar Entities have not engaged in fraud or misconduct and are not seeking to enforce the non-petition waiver as a shield against such conduct.

10

of the by-laws. *Id*. And, as noted in the Motion to Dismiss, the petitioning creditors in *In re Zais Inv. Grade Ltd. VII*, were not subject to a non-petition waiver. 455 B.R. 839 (Bankr. D.N.J. 2011).[7]

26.    In contrast, the Objection glosses over the one case that is directly on point – *In re DB Capital Holdings, LLC* – a BAP decision enforcing a provision in a limited liability company operating agreement in which the members agreed not to file an involuntary petition against the company. 463 B.R. 142 (B.A.P. 10th Cir. 2010). Notwithstanding that *DB Capital* is not binding in this District, the Zohar Entities respectfully submit that this Court should follow it, particularly in view of Patriarch XV being a *sole* petitioning creditor and the Second Circuit ruling in *S.E.C. v. Byers*, 609 F.3d 87 (2d Cir. 2010).

27.    It is true, as the Objection notes, that *Byers* involved an order issued by a district court enjoining creditors from filing an involuntary petition against a company that was subject to a S.E.C. receivership. However, the admittedly "sweeping" statement of the Second Circuit that "there is no unwaivable right to file an involuntary bankruptcy petition" is relevant to the issue of enforceability of the Indenture's non-petition provision and Patriarch XV's waiver of its right to file an involuntary petition for the following reasons: <u>First</u>, it stands for the proposition that, unlike voluntary petitions, the right to file involuntary petitions is not sacrosanct or Constitutional and can be abrogated and restricted. <u>Second</u>, if, as the Second Circuit says is the case, a federal court can enjoin creditors from filing an involuntary petition against their will and over their objection, then it stands to reason that private parties – especially those, such as Patriarch XV, that are sophisticated, experienced and advised by professionals – ought to be able to bind themselves not

---

[7] The Objection baldly asserts that the directors in *Zais* did not object to the filing "because they simply did not have a dog in the fight" (Objection at ¶7). Patriarch XV does not explain how it knows the directors' motivations in *Zais*. The more likely explanation is that those directors did not seek to enforce a non-petition provision because, in that case, there was none.

to file an involuntary petition and have that binding agreement enforced by a federal court. *See S.E.C. v Huber*, 702 F.3d 903, 908 (7th Cir. 2012) (following *Byers*).

28. For the foregoing reasons, as well as those set forth in the Motion to Dismiss, the non-petition provision in the Indenture and Patriarch XV's waiver of its right to file an involuntary petition should be enforced.

### III. ABSTENTION IS APPROPRIATE BECAUSE PATRIARCH XV DOES NOT HAVE A LEGITIMATE BANKRUPTCY PURPOSE

29. The Motion to Dismiss sets forth numerous reasons why this Court should abstain from these cases including factors that are routinely considered by courts under §305 such as (i) the cases having been filed to resolve a dispute between two non-debtors and (ii) the presence of pending litigation in state court between those same parties in which the same factual allegations and legal issues have been raised. *See* Motion to Dismiss at ¶¶ 32-37. In response, Patriarch XV contends that "the most important consideration" is "the purpose for which bankruptcy jurisdiction has been sought." Objection at ¶52 (citing *In re Persico Contracting & Trucking, Inc.*, No. 10-22736 (RDD), 2010 WL 3766555 (Bankr. S.D.N.Y. Aug. 20, 2010)).

30. The purported bankruptcy purpose Patriarch XV invokes is the need "to protect its interests in numerous operating companies, many of whom owe obligations not only to Zohar-I, but also to Zohar-II and Zohar-III" and those companies will be harmed "if MBIA forecloses on Zohar-I's assets and absconds with all the value." Objection at ¶55. But those are not legitimate bankruptcy purposes in this case for several reasons.

31. First, protecting portfolio companies owned by Ms. Tilton and her Patriarch companies is not a basis to haul the Zohar Entities into an involuntary bankruptcy. Ms. Tilton is perfectly capable of seeking relief for those companies as and when necessary, without violating the Indenture and requiring the Zohar Entities to become debtors. *See, e.g., In re 15375 Memorial*

12

*Corp. v. Santa Fe Minerals, Inc., (In re 15375 Memorial Corp.)*, 589 F.3d 605 (3d Cir. 2009) (affirming dismissal of voluntary petition and concluding that filing bankruptcy to protect affiliates serves no valid bankruptcy purpose).  <u>Second</u>, there currently is no pending or threatened foreclosure that needs to be staved off.  Given that its exposure to Zohar-II is more than five times greater than its exposure to Zohar-I, and the fact that many of the same companies are borrowers to Zohar-I and Zohar-II, it would seem logical to believe that MBIA will not take action that will make it more difficult for those companies to perform their obligations to Zohar-II.

32.     Finally, even if MBIA were to direct the Trustee to cause a sale of Zohar-I's assets in accordance with its contractual rights under the Indenture, Patriarch's Tilton-controlled affiliate Octaluna has the right under the Indenture to purchase the assets at or above the proposed sale price.  *See* Indenture at §5.4(a), proviso A.[8]  Therefore, if Patriarch XV believes MBIA is directing the Trustee to sell assets for less than their fair value, Octaluna can arrange for Patriarch to acquire the assets at or above the proposed price, step in as lender to the portfolio companies and capture the higher value it believes the assets are worth.  As such, the Indenture already gives Patriarch XV the protection it purports to seek in these involuntary cases.

## **<u>RESERVATION OF RIGHTS</u>**

33.     The Zohar Entities reserve their rights under §303(i) of the Bankruptcy Code to seek judgment against Patriarch XV.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

---

[8]  A copy of the Indenture is attached as **Exhibit C** to the Motion to Dismiss.

13

## **CONCLUSION**

For the foregoing reasons, the Zohar Entities respectfully request that the Court: (a) enter an order (i) dismissing the involuntary cases or, in the alternative, (ii) abstaining from the involuntary cases; and (b) grant the Zohar Entities such other relief as the Court deems just, proper and equitable.

Dated: January 4, 2015           **BLANK ROME LLP**
New York, New York

             By:   */s/ Rick Antonoff*
                   Rick Antonoff
                   Andrew B. Eckstein
                   Leon R. Barson *(pro hac admission pending)*
                   Josef W. Mintz *(pro hac admission pending)*
                   The Chrysler Building
                   405 Lexington Avenue
                   New York, New York 10174
                   (212) 885-5000

                   *Counsel to Zohar CDO 2003-1, Limited, Zohar CDO 2003-1 Corp. and Zohar CDO 2003-1, LLC*

137126.01062/101847823v.6